In re Copenhaver.

---

## *In Re* COPENHAVER *et al.*

### In Banc, December 4, 1893.

1. **Habeas Corpus:** MANDAMUS: CONTEMPT. In a *habeas corpus* proceeding by one imprisoned for contempt in disobeying a writ of *mandamus* issued by a circuit court of the United States, it cannot be determined whether errors were committed in awarding the writ, as the writ of *habeas corpus* cannot be used as a writ of error.

2. ——: FEDERAL AND STATE COURTS: JURISDICTION. The state courts and judges thereof have no jurisdiction or power to discharge prisoners who are held in custody by authority of the federal courts or by the authority of the commissioners of such courts, or by officers of the United States acting under the laws thereof, and this is true though the judgments or orders of the federal courts or commissioners are illegal.

3. ——: ——: ——. The remedy in all such cases is in the courts of the United States.

In re Copenhaver.

*Habeas Corpus.*

WRIT DENIED.

*Wallace W. Lawton*, Prosecuting Attorney of St. Clair county, for petitioners.

. (1)   The object and purpose of this imprisonment is to coerce the payment of a debt through a levy. Imprisonment for debt has been abolished in this state. Constitution of Missouri, art. 2, sec. 16; *Robert v. Stoner*, 18 Mo. 484; *Coughlin v. Ehlert*, 39 Mo. 283; *Ex parte Crenshaw*, 80 Mo. 447; *Mallory v. Fox*, 20 Fed. Rep. 409; *The Blanche Page*, 16 Blatch. 1.   (2)   The petitioners would have violated their oaths of office, and subjected themselves to criminal prosecution under the laws of Missouri, had they obeyed the order of the United States court.   Revised Statutes, 1889, secs. 7653, 7654.   (3)   The county court has no implied power to levy a tax.   Such power must be clearly given by statute, and if the legislature in conferring the power imposes conditions upon which it may be exercised, such conditions must be observed before the power can be lawfully exercised.   *State ex rel. v. Railroad*, 87 Mo. 236; *Same v. Same*, 92 Mo. 137; *Same v. Same*, 97 Mo. 297.   The assessed valuation of St. Clair county is $4,000,000.   These petitioners have no authority to exceed fifty cents on the one hundred dollars valuation.   They have levied the full constitutional limit at the time of levying the regular taxes for the year 1893.   Sec. 7662, art. 5, ch. 138, Revised Statutes 1889.   The whole of the sum of money derived therefrom is necessary and will be used and needed in the necessary payment of current county expenses.   And these justices have appropriated, apportioned and subdivided the revenues as provided in sec. 7663, art.

5, chap. 138, Revised Statutes, 1889. *State ex rel. v. County Court,* 101 Mo. 137. (4) The writ of *mandamus* and commitment require a levy to be made to pay particular judgments and particular individuals, when the court could only, in any event, even if it possessed the authority, make a levy for the purpose of paying railroad indebtedness to be applied on the whole indebtedness aggregating the sum of $1,000,000, which is unpaid in the form of judgments in the United States circuit courts, said judgments belonging to numerous and divers parties. *State ex rel. v. Smith,* 105 Mo. 6. (5) Said orders direct the rendition of a particular judgment and require the county court to exercise its judgment in a particular way, and command a court of record to exercise its discretion in a certain way, and compel the performance of a particular judicial act. A superior court may command a lower court to move, but not to move or decide a judicial act in a particular way. *State ex rel. v. County Court,* 68 Mo. 48; *State ex rel. v. Laughlin,* 75 Mo. 366; *State ex rel. v. Court of Appeals,* 87 Mo. 376; *State ex rel. v. Garesche,* 65 Mo. 489; *State ex rel. v. County Court,* 41 Mo. 224; High on Extraordinary Legal Remedies, sec. 533; *State ex rel. v. Field,* 37 Mo. App. 83. (6) The levy of fifty cents on the one hundred dollars valuation already having been made, these justices could not increase the levy, except as provided by the laws of the state of Missouri. A county court has no implied power to levy a tax; such power must be clearly and expressly given by statute. *State ex rel. v. County Court,* 56 Mo. 126; *Same v. Same,* 68 Mo. 29; *Same v. Railroad,* 87 Mo. 236; *Same v. Same,* 92 Mo. 137; *Same v. Same,* 97 Mo. 299; *Supervisors v. United States,* 18 Wall. 77; *Reardon v. St. Louis County,* 36 Mo. 560. (7) The petitioners are officers of the state of Missouri and are subject to the laws of the state of

Missouri, and they are prohibited by the laws of the state of Missouri from doing and performing the acts and things commanded by the writs of *mandamus*. The acts and commands so made in said writs of *mandamus* were, and are, null and void, and are contrary to the constitution of the United States, contrary to the laws of the United States, and are contrary to the constitution and laws of the state of Missouri. *State ex rel. v. County Court*, 68 Mo. 41; *Supervisors v. United States*, 18 Wall. 77. (8) Petitioners are prevented from doing and from performing their duties as officers of the state of Missouri and as members of the county court of St. Clair county at the present time or at any future time. There is no other tribunal authorized under the laws of the state of Missouri to transact the business of the county and carry on the county government in the absence of these justices. There is now important business requiring the judicial determination and adjustment of said county court in said county, without the attention of which by these justices and without the holding of the regular terms of the county court as provided in section 3428, Revised statutes, 1889, and the special terms which may be called as provided by law, the county will become disorganized, bankrupt and insolvent. The court has no power to block the county government and disorganize the county. *Grant v. Davenport*, 36 Iowa, 401; *Land Co. v. County*, 39 Iowa, 134; *French v. Burlington*, 42 Iowa, 618; *Price v. Commissioners*, 1 Whar. 1; *Com. v. Commissioners*, 6 Binney, 5. (9) The federal court has no power or jurisdiction to compel these justices to do the acts commanded in said *mandamus* named in the commitment, and has no power, authority or jurisdiction to issue any process for the imprisonment of these petitioners as members of the county court of St. Clair county, Missouri. The writ

of *mandamus* commanded a levy and that they cause the same to be collected and to pay the same. This the county court could not do. The county court establishes the rate and the collector makes the collection. The county court has no authority over this officer. The writ of *mandamus* was void upon its face for this reason. *Ex parte Terry*, 128 U. S. 305; *Ex parte Rowland*, 104 U. S. 604; *In re Ayers*, 123 U. S. 443; *Ex parte Lange*, 18 Wall. 163; *Ex parte Parks*, 93 U. S. 18; *In re Sawyer*, 124 U. S. 200; *Ex parte Siebold*, 100 U. S. 371; *In re Taylor*, 149 U. S. 164; *Ex parte Virginia*, 100 U. S. 339; *Ex parte Fisk*, 113 U. S. 713; *Ex parte Yeager*, 8 Wall. 85.

*John B. Henderson* and *John H. Overall* for respondent.

BLACK, C. J.—The three petitioners are the justices of the county court of St. Clair county. They file in this court their petition for a writ of *habeas corpus*, setting out fully and at length the facts and circumstances leading to their confinement, which are to the following effect:

In 1870, the county of St. Clair issued $250,000 of bonds, under the act of the sixteenth of January, 1860, incorporating the Tebo and Neosho Railroad Company, and the act of twenty-first of March, 1868, to aid in the construction of the Clinton and Memphis branch. The Ninth National bank of the city and state of New York recovered two judgments against the county on some of the bonds and coupons, in the circuit court of the United States. Such proceedings were had on on these judgments that the circuit court of the United States for the western division of the western district of this state, issued a peremptory writ of *mandamus* in each case, commanding the petitioners as justices of

the county court, "to levy, at the time of making the next annual levy, and cause to be collected, upon all the real and personal property in said county, subject to taxation, a tax for the payment of said judgment, and to pay the same according to law, and that you have said special taxes extended in a column of the regular tax book in the same manner," etc.

The writs were issued on the twenty-fifth of April and duly served on the first of May, 1893. Such other proceedings were had that on the tenth of May, 1893, the court entered the following judgment in each case: That the respondents, the petitioners here, "are guilty of contempt in disobeying as well as continuing to disobey the said peremptory writ of *mandamus* and the order and command therein, and for such contempt each of said respondents is here and now sentenced by this court to imprisonment in the county jail in the county of Jackson * * * until such a time as they shall comply with such mandate and order of this court, or until otherwise discharged therefrom by the order of this court, or otherwise pursuant to law."

Pursuant to these judgments, commitments were issued, by virtue of which the petitioners were and now are confined in the jail of Jackson county, and from which imprisonment they seek to be discharged by the writ of *habeas corpus*.

We have not set out the various averments made in the petition for the purpose of showing that the bonds were issued without authority of law and should have been held illegal and void, because the question as to the validity of the bonds is not an open one. The circuit court of the United States had undoubted jurisdiction of the parties to, and the subject-matter of, those suits, and the judgments are final and conclusive. We have no right or power to go behind the judgments; and, for all the purposes of this application, it must be

assumed that the bonds were, and are, valid obligations of the county.

Counsel for the petitioners insists in an elaborate brief, and earnestly insisted on the argument of this cause, that the petitioners are illegally imprisoned for various reasons. Some of the reasons assigned show, and only show, that the circuit court of the United States committed error in awarding the peremptory writs of *mandamus*. Such reasons would not justify any court in releasing the petitioners on *habeas corpus*; for that writ cannot be used as a mere writ of error. This is well settled law. Other of the reasons assigned for the discharge of the petitioners strike much deeper. Thus, it is insisted that the commitments are utterly void, because they are based upon a refusal to obey peremptory writs of *mandamus*, which writs of *mandamus* are void, because they command the petitioners to cause the taxes to be collected, when the petitioners, as justices of the county court, have nothing whatever to do with the collection of taxes, that duty being devolved upon the collector, who is a bonded officer, acting under the law and not under the orders of the county court. And in support of these propositions counsel cite *Ex parte Rowland*, 104 U. S. 604.

These and other propositions will be entitled to a full consideration at the hands of this court, if we have the power to go into them. But behind all of them is the question whether this court has any jurisdiction whatever to discharge the petitioners, they having been committed to jail for contempt by the judgment of a federal court; and this presents the first question for our consideration.

The facts in the cases of *Ableman v. Booth* and the *United States v .Booth*, 21 Howard, 506, are, in short, to the following effect: In one case Booth had been arrested on warrants issued by a United States commis-

sioner.   A judge of the supreme court of Wisconsin discharged Booth on *habeas corpus*, on the ground that the law was unconstitutional, for a violation of which the arrest had been made.   In the other case Booth was subsequently arrested and convicted in a federal court for the same offense, and the state court again discharged him on *habeas corpus*.   Both cases were taken to the supreme court of the United States for review.   The court said:   ''There can be no such thing as judicial authority, unless it is conferred by a government or sovereignty; and if the judges and courts of Wisconsin possess the jurisdiction they claim, they must derive it either from the United States or the state.   It certainly has not been conferred on them by the United States; and it is equally clear it was not in the power of the state to confer it, even if it had attempted to do so; for no state can authorize one of its judges or courts to exercise judicial power by *habeas corpus* or otherwise, within the jurisdiction of another and independent government.   *   *   *   And the state of Wisconsin had no more power to authorize these proceedings of its judges and courts, than it would have had if the prisoner had been confined in Michigan, or in any other state of the union, for an offense against the laws of the state in which he was imprisoned.'' And further on it is again said:   ''We do not question the authority of state court, or judge, who is authorized by the laws of the state to issue the writ of *habeas corpus*, to issue it in any case where the party is imprisoned within its territorial limits, provided it does not appear, when the application is made, that the person imprisoned is in custody under the authority of the United States.   *   *   *   But, after the return is made, and the state judge or court judicially apprised that the party is in custody under the authority of the United States, they can proceed no further.''

The principles asserted in these cases were affirmed in *Tarble's case*, 13 Wall. 397. There the specific question was, whether a state court commissioner had jurisdiction, upon *habeas corpus*, to inquire into the validity of the enlistment of a soldier into the military service of the United States. The court stated the question to be decided in much broader terms, that is to say; "Whether any judicial officer of a state has jurisdiction to issue a writ of *habeas corpus*, or to continue proceedings under the writ when issued, for the discharge of a person held under the authority, or claim and color of the authority, of the United States, by an officer of that government." It was held that state judicial officers have no such jurisdiction, and hence the state court commissioner was without jurisdiction to issue the writ of *habeas corpus* for the discharge of the prisoner, he being held under claim and color of the authority of the United States.

In answer to the claim made in the case now in hand that the commitments are void because the writs of *mandamus* command the petitioners to do that which they have no power to do, namely cause the taxes levied by them to be collected, we make the following quotation from the case last mentioned: "Some attempt has been made in adjudications, to which our attention has been called, to limit the decision of this court in *Ableman v. Booth* and the *United States v. Booth*, to cases where a prisoner is held in custody under undisputed lawful authority of the United States, as distinguished from his imprisonment under claim and color of such authority. But it is evident that the decision does not admit of any such limitation." A state court or judge, it is held, should not proceed, if the prisoner is held under what purports to be the authority of the United States, that is to say, "an

authority, the validity of which is to be determined by the constitution and laws of the United States. If a party thus held be illegally imprisoned it is for the courts or judicial officers of the United States, and those courts, or officers alone, to grant his release.''

In *Robb v. Connolly*, 111 U. S. 624, it was held that an agent appointed by a state in which a fugitive stands charged with a crime, to receive the fugitive from the state surrendering him, is not an officer of the United States within the meaning of the cases before cited; and it was further ruled in that case that, while the federal courts have the exclusive authority to determine whether persons are held in conformity with law, who are held in custody by authority of the national courts or the commissioners thereof, or by officers of the United States, yet the states have the right, by their courts and judges, in all other cases, to inquire into the grounds upon which any person is restrained of his liberty, and to discharge him if illegally restrained; and this, too, although such illegality may arise from a violation of the constitution and laws of the United States.

From the foregoing authorities it must be taken as now well established law that state courts and the judges thereof have no jurisdiction or power to discharge persons who are held in custody by authority of the federal courts, or by the authority of the commissioners of such courts, or by officers of the United States acting under the laws thereof; and this is true though the judgments or orders of the federal courts or commissioners are illegal. The remedy in all such cases is in the courts of the United States. Adherence to these rules is absolutely necessary to prevent conflict of jurisdiction and to maintain and uphold the stability of both the national and state governments. On the other hand state governments and the judges thereof

have all the exclusive jurisdiction of independent governments, except so far as the states have granted judicial powers to the general government. Out of this exception arises the doctrine that the federal courts and judges may by *habeas corpus* release persons restrained of their liberty in violation of the constitution and laws of the United States, though such persons are restrained, under the criminal process of the state. This inequality is due to the fact that the constitution and laws of the United States are the supreme law of the land.

It appears on the face of the petition in this case that the petitioners are imprisoned by virtue of the orders or judgments of a court of the United States; and it follows from what has been said that this court has no power, on the conceded facts to discharge them, and this is true though this court should be of the opinion that the judgments of the circuit court of the United States are in excess of its rightful powers. It is therefore out of place here to go into the question whether the orders of commitment are in any respect in excess of the jurisdiction of that court. That is a question which must be determined by the national courts themselves.

As to the objection that the commitments place no limit upon the duration of the imprisonment, save a compliance with the writs of *mandamus*, it may be observed, in addition to what has been said, that those courts, in matters of contempt, proceed according to section 725, Revised Statutes of the United States, and not according to the statute law of this state. The writ is therefore denied. BARCLAY, J., absent. The other judges concur.