In the Matter of Application of Charles Coder for Writ of Habeas Corpus.—44 S. W. (2d) 179.

Kansas City Court of Appeals.   December 5, 1931.

480

*Samuel W. Liske* for relator.

*W. M. Anderson*, Prosecuting Attorney, for respondent.

TRIMBLE, J.—This is an application for a writ of *Habeas Corpus* in behalf of one, Charles Coder, now confined in the Cass county jail at Harrisonville, Missouri, under a commitment from a justice of the peace of said county, setting forth that said Charles Coder was on October 21, 1931, by an information filed by the Prosecuting Attorney of that county, charged with "unlawful assemblage" and, upon trial, was by the jury "found guilty and his punishment assessed at a fine of $500 and 365 days' imprisonment in the county jail," on which judgment was rendered and defendant ordered confined for the time specified.

The complaint, upon which the warrant for the prisoner's arrest is founded, was made by W. M. Anderson and is dated October *19*, 1931 while the warrant is dated October *17*, 1931. The information, signed by W. M. Anderson, Prosecuting Attorney of Cass county, Missouri, was sworn to by him and filed on the *27th* of October, 1931. The record of the judgment of the justice in which the prisoner was fined $500 and imprisoned for a year, bears no date at the outset unless the notation "19th—1931" at the beginning of the judgment may be regarded as such. But immediately after the recital of the offense charged against the prisoner is an entry "defendant pleads not guilty, and waives reading of information, October *21*, 1931." The summons for a panel of jurymen requires them to appear October 21, 1931; the subpoenas for witnesses command them to appear on October 21, 1931; and the Commitment, by virtue of which the sheriff received and now holds the prisoner, recites that the trial was held on October 21, 1931.

The *complaint,* upon which the warrant was issued, recites that "on the 17th day of October, 1931, at the county of Cass and State of Missouri, one Charles Coder did then and there unlawfully and wilfully with Sam Stevens and many others assemble together in Pleasant Hill Township, county of Cass and State aforesaid with intent then and there to assist each other in the doing of an unlawful act; which was to advocate the Communist Party and to adhere to the Statutes of the Communist's International. And he the said defendant did advocate the same and accepted subscriptions for the same. And that the said defendant did then and there unlawfully, wilfully and intentionally make statements to the effect of the abolition of all forms of government as provided by the State of Missouri, and as provided by the Constitution of Missouri and the General and Revised Statutes of Missouri, 1929, with intent then and there to cause mob violence by making statements to the effect

that the time had come when it was necessary that all classes raise in rebellion against all forms of government and do the same with force and arms, and with intent then and there to distribute Soviet or Communist literature, all of which he the said defendant did then and there unlawfully against the peace and dignity of the State.''

The *Information* charged that at the county of Cass and State of Missouri, and in the Township of Pleasant Hill, one Charles Coder on the 17th day of October, 1931, ''did then and there unlawfully and wilfully with Sam Stevens and many others assemble together in Pleasant Hill Township, county of Cass and State aforesaid, with intent then and there to assist each other in the doing of an unlawful act; which was to advocate the Communist Party and to adhere to the Statutes of the Communist's International. And he the said defendant did advocate the same and accept subscriptions for the same. And that the said defendant did then and there unlawfully and wilfully and intentionally make statements to the effect of the abolition of all forms of government as provided by the State of Missouri, and as provided by the Constitution of Missouri, and by the General Revised Statutes of Missouri, 1929, with intent then and there to cause mob violence by making statements to the effect that the time had come when it was necessary that all classes raise in rebellion against all forms of government and do the same with force and arms and with intent then and there to distribute Soviet or Communistic literature of all of which he the said defendant did then and there unlawfully and wilfully, against the peace and dignity of the State.''

The record of the *judgment* of the justice in setting forth the offense, followed the wording of the complaint and information except that the clause ''and accept subscriptions for the same'' was omitted or not included. Otherwise the record as to the offense followed *verbatim* the complaint and information.

The record of the judgment further recites ''Waives the panel of twelve jury and accepts jury of six men. Jury finds defendant guilty of charge and assess his punishment, one year in county jail and $500 fine.''

The verdict returned by the jury reads as follows:

''We the jury find the defendant guilty of unlawful assemblage as set out in the information and assess his punishment at one year in the county jail and a fine of $500 dollars. C. E. Bailey, Foreman.''

Upon the appearance of the sheriff with the prisoner in charge also came counsel for petitioner and the prosecuting attorney of Cass county who appeared for the sheriff and State. A motion was filed by said prosecuting attorney to dismiss the proceeding because he was not notified as required by Rule 31 of our court. The rule, if applicable to a proceeding before one of the judges in the va-

cation of the court, or to an application of the kind here presented, does not provide that after the writ has been issued and appearance thereto has been made, a failure to notify the prosecuting attorney will authorize a *dismissal* of the proceeding. There was a dispute as to the *sufficiency* of the notice to the prosecutor, but as he appeared, and the judge granted the prosecutor additional time after the hearing in which to present the law applicable to his side of the case, there is no ground for sustaining the motion to dismiss, even if a dismissal for failure to notify the prosecutor is otherwise permissible or proper. The motion to dismiss is overruled.

The sheriff filed a motion to quash the writ because there was not tendered to him any money as set out in section 1438, Revised Statutes 1929, to defray expense of transporting the prisoner from the jail in Cass county to the courtroom in Kansas City where the hearing on the writ was had. In view of the fact that petitioner urged that such fees and expenses had been guaranteed the sheriff at the time. and, on the announcement of the judge hearing the application that the sheriff was not required to rely on a *guarantee,* the petitioner immediately paid such expenses in cash, and as the sheriff was before the judge with his prisoner even though such expenses had not therefore been tendered or paid, the motion to quash should be and is overruled.

The petition for the writ discloses that the judge of the circuit court of Cass county was not in said county at the time of the application, and this is not disputed. Hence the judge issuing the writ in this proceeding has jurisdiction not only to issue the writ but to hear and determine the matter. [Sec. 1491, R. S. 1929; Ex parte Shoffner, 173 Mo. App. 403; Ex parte McAnally, 179 Mo. 512.]

Is the prisoner entitled to be discharged or must he be remanded?

Many objections are raised attacking the sufficiency of the proceedings before the justice and under which the prisoner is confined. Some of these are mere ''bare technicalities,'' and some would be of substance if this were a proceeding on appeal. It is well settled, however, that a hearing on *habeas corpus* cannot be allowed to take the place of an appeal or writ of error. [Buckley v. Hall, 215 Mo. 93; Copenhaver v. Stewart, 118 Mo. 377.] The correctness of the proceedings in the justice court is not reviewable on *habeas corpus,* except as to such matters going to the *jurisdiction,* i. e., the *power* of the justice, to render the judgment under and pursuant to which the prisoner is held. [Sec. 1459, R. S. 1929; Ex parte Nect, 157 Mo. 527.] Although attention has been called to the apparent discrepancy between the dates of the various steps taken in the justice court, namely, that the complaint was filed on the 19th of October, 1931, while the warrant seems to have been issued *two days before* that, and the trial and conviction occurred on the 21st

of October but the information, not showing when it was filed, was not sworn to until on the 27th of October, some six days *after the trial,* the disposition of the case is not bottomed upon these matters, for the reason that even if they could be considered on *habeas corpus,* the recitals in the judgment itself are deemed sufficient to show that the complaint, warrant and information were duly made and filed prior to the trial, and hence the apparent discrepancy 'between said dates are mere typographical errors which could not affect the validity of the judgment.

Therefore, the only question affecting the validity of such proceeding which will be considered herein is, whether or not the complaint and information, or which the judgment and imprisonment rests, contain the elements, or charge the commission, of any offense against the law? If they do not, then the judgment is void and of no effect; and, in that situation, nothing in the way of an amendment to such proceedings can give life or validity to the judgment, or to any judgment to be rendered thereunder.

Does the information charge any offense? It is manifest that the information sought to charge defendant with the offenses of "unlawful assembly" which is defined in section 4221, Revised Statutes 1929. And it is *this* offense of which the prisoner is convicted, as shown not only by the express statement in the verdict of the jury but by the judgment itself and the recital of the offense in the commitment.

Section 4221 aforesaid reads as follows:

"Section 4221. *Unlawful Assembly.* If three or more persons shall assemble together with the intent, or being assembled shall agree mutually to assist one another, to do any unlawful act, with force or violence, against the person or property of another, or against the peace or to the terror of the people, such persons so assembling, and each of them, shall be deemed guilty of an unlawful assembly, and on conviction thereof shall be punished as for a misdemeanor."

It is clear that to constitute this offense there must be at least three persons who *assemble* together. They must do so either *with the intent* to do an unlawful act, or after being assembled, must *agree mutually to assist* one another to do an unlawful act with force or violence against the person or property of another, or against the peace or to the terror of the people.

Now the information says that defendant, with Sam Stevens and many others, did unlawfully and wilfully assemble together "with intent then and there to assist each other in the doing of an unlawful act;" and then specifies that unlawful act by saying "which was to advocate the Communist Party and to adhere to the Statutes of the Communist's International." This ends the specification of the unlawful act which the three or more persons are charged to have

assembled with intent to do. What is stated thereafter in the information is, not what the three and more persons *intended to do in thus assembling,* nor what, after assembling, they *agreed mutually to assist one another in doing,* but what the defendant *alone* did, namely, that *he* advocated adherence to the Communist Party and the adherence to the Statutes of the Communist's International, and took up a collection, or "accepted subscriptions" for said party. Now, if there is any law against peacefully advocating adherence to any party and its principles or making same a crime, the writer hereof is not aware of it, nor has any such law been called to his attention, although, at the hearing, request was made of counsel for the State to produce it if there were any. Again, the *intent* or *agreements,* of the persons assembling or assembled must be *to do an unlawful act,* with *force or violence,* against the person or property of another, or *against the peace or to the terror* of the people. It is not seen how the act of advocating adherence to the Communist Party or the taking up of a collection in support thereof. has in them the elements of force or violence or would affect the peace of or bring terror to the people.

It is true the information then goes on to say that the defendant (himself, not the assembled three or more, nor that they acquiesced therein), unlawfully made statements which, according to the *conclusion* of the pleader, would affect the abolition of all forms of government, etc., and, which, in effect, declared that the time had come when it was necessary that all classes rise in rebellion, etc., and that the statements were made "with intent then and there to distribute Soviet or Communist literature." But it is plain from the information that whatever statements were made by the prisoner even if they supported the conclusion of the pleader or informant, and however offensive and distasteful to an American citizen, nevertheless, they did not form a part of the intent or agreement of the persons assembling or assembled. They were merely in a speech made by the prisoner himself at such meeting. In State v. Berry, 21 Mo. 504, 507, it is said "there must be three or more persons charged, in order to constitute the offense under our statute." Clearly there is no charge that the three or more persons assembling intended, or agree mutually, to assist one another in advocating the abolition of all forms of government or in declaring that the time had come when all classes should rise in rebellion, etc. The only intent with which the assembly is charged is that of advocating the Communist Party, etc. This cannot logically be claimed to be an effort toward abolishing all forms of government, because Communism is a form of government, and, in fact, is the only form of government there is in Soviet Russia, however undesirable and offensive it may be to us.

The claim that the speech or statements, alleged in the information to have been made by the prisoner, contain the elements of some crime in the nature of a "seditious harangue" can have no weight for that is not the charge of which he was convicted. Even if it could be said that the information inartificially contains the charge of more than one offense, still since the jury found the prisoner guilty of the crime of "unlawful assembly" this would seem to be, in legal effect, an *acquittal* of any claimed offense contained in the speech or statements of the prisoner. If there is such an additional offense embedded in the information, the prisoner has been acquitted of that offense; or if not, in order to convict him thereof, it would be necessary to proceed under another and entirely different information charging such other claimed offense. The situation does not, therefore, call for a remand of the prisoner in order that he may be properly proceeded against.

It is my view that the prisoner is, under the Constitution and laws of the State (the abolition of which it is claimed the prisoner so earnestly desires), entitled, nevertheless, to be discharged from the custody and imprisonment of which he complains. It is fortunate for him that he is in a State and country where the Constitution and laws thereunder and especially the writ of *habeas corpus*, are in force and can be invoked by the humblest citizen.

The prisoner is discharged and the sheriff of Cass county, Missouri, is hereby ordered to release him.