Raymond vs. Keseberg and another.

RAYMOND, Respondent, vs. KESEBERG and another, Appellants.

*January 31 — February 21, 1893.*

*Municipal corporations: Deposit of building materials, etc., on street: Injury to traveler: Negligence: Inconsistent verdict: Rights of abutting lot-owner.*

1. In an action against a city and a lot-owner for injuries caused by the upsetting of plaintiff's buggy at night on a pile of dirt which the lot-owner had excavated from a cellar and placed on the street, a special verdict finding that no lighted lantern was on or near the pile, and that the lot-owner did not use ordinary care and prudence to

prevent injury to travelers from the obstruction, but that plaintiff's injury was caused by the negligence of the city alone, is not sufficient, in the absence of a general verdict, to sustain a judgment against the lot-owner.

2. In such case, if the city was guilty of negligence which caused the injury, the lot-owner was necessarily guilty of the same negligence, and the special verdict is therefore inconsistent and contradictory and will not sustain a judgment against the city.

3. The right of a lot-owner in a city, when building, to deposit building materials and earth upon the adjoining street, is the right of an abutter as such alone and not as an owner of the fee of any part of the street. It is therefore founded on and limited by reasonable necessity, to be determined, in the absence of municipal regulations, by the circumstances of each particular case.

APPEAL from the Circuit Court for *Calumet* County.

. This was an action by plaintiff, *Raymond*, to recover damages for personal injuries sustained by the upsetting of a buggy in which he was riding upon a mound of earth in a public street in the city of Sheboygan, May 13, 1885. The action was first commenced against the defendant *Dorothea Keseberg* and her husband, Joseph Keseberg, in June, 1887, and the city was impleaded as a defendant July, 1889. Joseph Keseberg died in March, 1889, and the action was tried against *Dorothea* and the city in April, 1891. The action has already been once before this court, upon general demurrer by the defendant city. 76 Wis. 335. It was then held that a good cause of action was stated against the city.

It appeared upon the trial that the defendant *Dorothea* was the owner of a lot abutting on Ninth street in the defendant city, and in May, 1885, was building a house thereon, and that a portion of the dirt excavated from the cellar was placed in front of her lot in said Ninth street, making a pile, which plaintiff ran upon with his buggy in the evening of May 13th, and was thereby thrown out and injured. The length of time which this pile of dirt remained in the street before the accident, the height and

Raymond vs. Keseberg and another.

extent thereof, and whether any warning light was displayed thereon during the evening in question, were all controverted questions upon the trial.

A special verdict was rendered by the jury as follows: " (1) Was the plaintiff's injury caused by the want of ordinary care and prudence on the part of the defendants or either of them? *Answer.* Yes. (2) If you answer the first question ' Yes,' then state which one was so guilty. *A.* The city of *Sheboygan.* (3) Did the city have notice of the defect for such a length of time prior to the injury that it ought, in the exercise of ordinary care and prudence, to have removed the same? *A.* No. [Answered by the court.] (4) Had the defect existed for such a length of time prior to the injury that the city ought to have known of the same? *A.* Yes. (5) Was the plaintiff guilty of the want of ordinary care and prudence on his part which contributed proximately to the injury? *A.* No. (6) Was there a lighted lantern upon or near the mound of earth on the night of the accident, for warning travelers of the obstruction? *A.* No. (7) Did the defendant *Keseberg* use ordinary care and prudence on the night in question to avoid injury from the obstruction to travelers on the night in question? *A.* No. (8) If the court should be of the opinion that the plaintiff is entitled to recover, at what sum do you assess his damages? *A.* $5,000."

Judgment was rendered on the verdict against both defendants, and they both appeal.

For the appellants there was a brief by *Seaman & Williams,* attorneys for *Dorothea Keseberg,* and *Carl Runge,* with *A. C. Prescott* of counsel, for the city of *Sheboygan,* and oral argument by *W. H. Seaman* and *Mr. Prescott.* They argued, among other things, that the court erred in instructing the jury that the defendant *Mrs. Keseberg* could not rightfully use more than her side or half of the street upon which to place the dirt dug from her cellar and the

materials used in the house which she was building on her adjoining lot. *Raymond v. Sheboygan*, 70 Wis. 318; *Comm. v. Passmore*, 1 Serg. & R. 217; *Van O'Linda v. Lothrop*, 21 Pick. 292, 32 Am. Dec. 261; *King v. Cleveland*, 28 Fed. Rep. 835; *Wood v. Mears*, 12 Ind. 515, 74 Am. Dec. 222; *State ex rel. Beatty v. Mayor*, 14 Neb. 295; *Chicago v. Robbins*, 2 Black, 418; *Clark v. Fry*, 8 Ohio St. 358, 72 Am. Dec. 590; *Callanan v. Gilman*, 107 N. Y. 360; Opinion of MORSE, J., in *McArthur v. Saginaw*, 58 Mich. 357; *Agnew v. Corunna*, 55 Mich. 428; *Hundhausen v. Bond*, 36 Wis. 29; *Davis v. Winslow*, 51 Me. 264, 81 Am. Dec. 573; *Graves v. Shattuck*, 35 N. H. 268, 69 Am. Dec. 536; 2 Dillon, Mun. Corp. sec. 730; Whittaker's Smith, Neg. 110; Jones, Neg. of Mun. Corp. sec. 79; 3 Lawson, Rights, R. & P. sec. 1164; 9 Am. & Eng. Ency. of Law, 413 and note. To charge the city with negligence, it must have notice of the failure to place the warning lantern. *King v. Cleveland*, 28 Fed. Rep. 835; *Cleveland v. King*, 132 U. S. 300; *Mullen v. Rutland*, 55 Vt. 77; *Weirs v. Jones Co.* 80 Iowa, 351; *Thiessen v. Belle Plaine*, 81 id, 118; *Klatt v. Milwaukee*, 53 Wis. 196; *Doherty v. Waltham*, 4 Gray, 596; Jones, Mun. Corp. secs. 96, 110.

For the respondent there was a brief by *G. W. Foster*, attorney, and a supplemental brief by *Finch & Barber* and *C. W. Felker*, of counsel, and oral argument by *G. W. Foster*, *Charles Barber*, and *F. Beglinger*.

WINSLOW, J. We regard the special verdict as clearly insufficient to justify a judgment against the defendant *Mrs. Keseberg*. True, it is found in reply to the sixth and seventh questions that no lighted lantern was on or near the pile of dirt on the night of the accident, and that *Mrs. Keseberg* did not use ordinary care and prudence to prevent injury to travelers from the obstruction on the night in question, but it is nowhere found that the plaintiff's injury

Raymond vs. Keseberg and another.

was the result of the absence of a lantern or of the failure of *Mrs. Keseberg* to exercise care, nor does such a conclusion necessarily follow. Furthermore, the answers to the first and second questions clearly negative the idea that any want of care on the part of *Mrs. Keseberg* caused the accident. The substance and legal effect of these two questions and answers are that the plaintiff's injury was caused by want of ordinary care on the part of the city of *Sheboygan* alone. This is made more apparent when we consider the charge of the court in regard to the second question, viz.: "Now, the next question is: 'If you answer the first question, "Yes," then state which one was so guilty, or whether both were.' Now, if you should find that one of them was guilty of negligence, and the other not, then you would write in the name of the one which was guilty of negligence, as your answer to this question. If you should find that both of them were guilty of negligence or the want of ordinary care and prudence, then you will write in, as your answer to this question, both of them. I don't know as I can make that any plainer to you, gentlemen, and I think you understand that. If you answer the first question, ' Yes,' then you are to name here which one of the two was guilty of negligence, if only one of the two; or, if both of them were guilty of negligence, then you will write in both of them, as your answer." Combining the first, second, sixth, and seventh findings, the conclusions of the jury upon the question of *Mrs. Keseberg's* alleged negligence and its results may be briefly stated thus: There was no lantern displayed, and *Mrs. Kesebery* did not use ordinary care to prevent injury to travelers, but the plaintiff's injury was caused by the negligence of the city of *Sheboygan* alone. There is no general verdict to which we can resort to supply facts which are missing in the special findings; and there being no finding, express or implied, that the plaintiff's injury was caused by any negligence of *Mrs. Keseberg*,

but, on the other hand, a direct finding that it was caused by the negligence of the city alone, there can be no judgment on the verdict against *Mrs. Keseberg.*

These considerations seem equally fatal to any claim of liability on the part of the city, under this verdict. It is true that the jury have found that the plaintiff's injury was caused by the city's negligence, but they have also found, in legal effect, that it was not caused by the negligence of *Mrs. Keseberg.* Now, if the city was negligent, it must be by reason of some negligent act or omission to act primarily chargeable to *Mrs. Keseberg,* such as the failure to light or guard the pile, or allowing it to occupy a greater portion of the street than was reasonably necessary. To express it briefly, if the city was guilty of negligence which caused the injury, *Mrs. Keseberg* was necessarily guilty of the same negligence. Therefore the verdict which finds that the city was guilty of negligence causing the accident, but that *Mrs. Keseberg* was not, is manifestly inconsistent and contradictory, and will not sustain a judgment against the city.

Another important question, much discussed upon the argument, seems necessary to be considered, as it will almost inevitably arise on a new trial. There was a conflict in the evidence as to the distance which the pile of dirt extended into the street, it being claimed on the part of the plaintiff that it extended more than halfway across the street, which claim was disputed by defendants' witnesses. The general legal principle was recognized by both parties that an abutting lot-owner in a city may, when building, rightfully deposit building materials and earth within the limits of the adjoining street, provided he does not improperly obstruct the same, uses no more space than reasonably necessary, uses proper care to warn travelers of the fact, and removes the same within a reasonable time. Upon this subject the circuit judge charged the jury as follows:

"Now, parties who own lots adjoining a street in this city, and desiring to erect buildings upon the street, have the right, to a certain extent, to use their side of the street temporarily for the deposit of earth and building materials that are rendered necessary for the erection of the building. Upon that subject the law is as follows: When, in a city, the owner of a private lot has occasion to build, and for that purpose to dig cellars, he may rightfully lay his building materials and earth within the limits of the street, provided he takes care not improperly to obstruct the same, and to remove them within a reasonable time. So that the defendant *Mrs. Keseberg* might lawfully deposit the excavated earth in the half of the street next her lot, provided the street was not improperly obstructed by it, and provided it was removed within a reasonable time; but this temporary impediment to the highway is licensed only so far as it is reasonably necessary, and must be placed in the most convenient manner for safe passage over the highway by night and by day, and be guarded by due precautions against accidents to passengers, and must not be continued longer than is necessary." And, again: "It is claimed on the part of the plaintiff, and he has given evidence tending to show, that this dirt extended beyond the center of the street, over past the center of the street off from the land of *Mrs. Keseberg*. That is denied on the part of the defendants, and they have given evidence on their part tending to show it did not."

Now, although the circuit judge did not say to the jury in so many words that the abutting owner's right was absolutely limited to the half of the street adjoining her lot, we think the jury must have obtained that idea from the charge, and the question thus arises whether the abutting owner's right is so limited. In support of this view the plaintiff relies upon the case of *Hundhausen v. Bond*, 36 Wis. 29, in which the language used by the late learned

Chief Justice RYAN seems to base the abutting owner's right upon his ownership of the fee to the center of the street, and thus necessarily to limit the extent of the right to the extent of the ownership. The question whether the right is limited to the use of half of the street was not at issue nor discussed in that case, and consequently the language there used cannot be considered as controlling; nevertheless the views of so eminent a jurist are not to be lightly regarded or overruled without weighty reasons.

It seems very clear that if, as was assumed in *Hundhausen v. Bond*, the abutting owner's right to temporarily use a part of the street for building operations arises from his ownership of the fee of one half of the street, then the extent of the right must be limited by the extent of the ownership, and the charge of the court in this case was right. If, on the other hand, the right is founded on reasonable necessity alone, the extent of ownership in the street can cut no figure, because the necessities of an abutting owner who has no ownership in the adjoining street are just as great, other things being equal, as the necessities of the abutter who owns the fee to the center of the street. The principle that an abutting lot-owner in a city has a right to use temporarily a reasonable portion of the street has been long recognized in both English and American law, and is laid down in numerous adjudicated cases. Many of these cases are cited in appellants' brief. We have carefully examined these cases, and nowhere do we find that the right is based upon the ownership of the fee of any part of the street, but always upon the necessities of the situation. Nowhere is the reason of the rule more tersely and clearly stated than in the early case of *Comm. v. Passmore*, 1 Serg. & R. 217, where TILGHMAN, C. J., uses the following language: "It is true that necessity justifies actions which would otherwise be nuisances. It is true, also, that this necessity need not be *absolute;* it is enough if it be *reasonable.* No man has a

right to throw wood or stones into the street at his pleasure; but, inasmuch as fuel is necessary, a man may throw wood into the street for the purpose of having it carried to his house, and it may lie there a reasonable time. So, because building is necessary, stones, brick, lime, sand and other materials may be placed in the street, provided it be done in the most convenient manner." Such is substantially the line of reasoning of all of the cases. The right is a temporary invasion of the public easement of passage. Ownership of the fee cannot justify this invasion, because the fee is entirely and completely subordinate to the dominant easement; it can only be justified on the ground of necessity. This view is greatly strengthened by the case of *Van O'Linda v. Lothrop*, 21 Pick. 292, which is the only case relied upon in *Hundhausen v. Bond*, and which is there approved as accurately stating the law. In *Van O'Linda v. Lothrop*, the abutting owner, who was held to have the right to place building materials in the adjacent way, was expressly decided to have no ownership in the way at all, but to have a mere right of way, in common with others, over it, and his right was based solely on the ground of necessity. The fact that the *Hundhausen Case* was based upon the *Van O'Linda Case*, where the element of ownership of the fee was entirely lacking, would seem to be proof that the subject of the foundation of the right was not investigated nor intended to be decided in the *Hundhausen Case*.

We hold that the right is the right of an abutter simply as an abutter, and not as an owner of the fee of any part of the street. Being the right of an abutter as such alone, it is founded on and limited by reasonable necessity, to be determined in each case by the facts of the case. Doubtless the right may be regulated, as it often is, by reasonable municipal regulations as to the space to be occupied, but, in the absence of any such regulations, the question of

the extent of the reasonable necessity must depend upon the circumstances of each particular case.

It is claimed that the action against the city is barred by laches. This contention was decided adversely to the city upon the former appeal (76 Wis. 335), and we shall not again discuss it. No other questions demand attention.

*By the Court.*— Judgment reversed, and cause remanded for a new trial.

The right of an abutting owner to place building materials in a street is discussed in a note to the above case in 19 L. R. A. 643.— REP.