# HESSELBACH, Appellant, v. CITY OF ST. LOUIS et al.; CITY OF ST. LOUIS, Appellant.

### Division One, February 10, 1904.

1. **Obstructing Sidewalk:** LIABILITY OF CONSTRUCTION COMPANY: THIRD PARTIES. When a construction company, under permission of the city, tears up a public street for the purpose of constructing a public improvement, its duty does not end when it properly piles up the paving stones, but it is its continuing duty to use reasonable care to keep such stones safely piled. If it sees that the street or sidewalk is in a safe condition at the close of every day, and some third persons scatter the stones during the night, and thereby cause the injury of a pedestrian or traveler on the street in the exercise of ordinary care, neither the city nor the construction company is liable.

2. **Erroneous Instructions for Respondent: Affirmed Notwithstanding.** Notwithstanding erroneous instructions may have been given on behalf of a defendant, a judgment in its favor will be permitted to stand if the plaintiff wholly failed to make out a case.

3. **Obstructing Sidewalk:** WHEN LAWFUL. While it is true that sidewalks are intended for pedestrians, it is also true that

a temporary use of them, for a reasonable time, for goods or materials in making public improvements, building houses or carrying on business, is a lawful use.

4. ——— : NEGLIGENCE CHARGED. In tearing up the paving stones of a street for the purpose of constructing an electric railway, the construction company piled up the stones in a perpendicular wall on the sidewalk and then made another perpendicular wall five feet high in the street, and filled in between them with the loose stones. The sidewalk was twelve feet wide, and the space between the perpendicular wall on the sidewalk and the buildings was from seven to nine feet wide. *Held*, that there being no evidence showing that this was a dangerous obstruction to persons walking along the sidewalk in the exercise of reasonable care, no judgment against the company for injuries received by a woman while walking along the sidewalk in the nighttime could be permitted to stand under a petition charging only that negligence.

5. ——— : ——— : Liability of City. And since the jury returned a verdict for the construction company in such case, and the plaintiff predicated her right to recover against the city solely upon the proposition that the company had negligently obstructed the sidewalk in thus piling up the paving stones on the sidewalk and on the proposition that the city had permitted this obstruction to exist, a verdict against the city can not be permitted to stand.

6. ——— : Loose Stones: Theory of Petition: Other Negligence. Plaintiff predicated her right to recover against the city for injuries received by her while walking along a sidewalk, solely upon the negligence of the city in permitting stones to be piled upon a part of the sidewalk by a company which was constructing an electric railway in the street, in such a manner as to necessarily constitute a dangerous obstruction to travel along the sidewalk. *Held*, that, having elected to stand on this claim of negligence, she can not recover upon the theory that loose stones were permitted to remain on the sidewalk after the city was charged with notice thereof, nor upon any other act of negligence.

Appeal from St. Louis County Circuit Court.—*Hon. Jno. W. McElhinney*, Judge.

AFFIRMED ON PLAINTIFF'S APPEAL; REVERSED ON APPEAL OF ST. LOUIS.

*A. R. Taylor* and *Morris Tucker* for Hesselbach, appellant and respondent.

(1)   Under the evidence the plaintiff was entitled to go to the jury: first, because the evidence on the part of plaintiff tended to show that the sidewalk on the west side of Broadway, near Penrose street, was obstructed by loose stones and rocks lying in the middle of the sidewalk; second, because those obstructions were dangerous for persons walking along said street; third, because said obstructions remained there for at least a period of four weeks.   (2)   A citizen may proceed on his way upon the highway with the assurance that it is reasonably safe, and is not required to anticipate the wrongful act of another in obstructing it.   O'Connor v. Railroad, 94 Mo. 156; Sullivan v. Railroad, 23 S. W. 149; Gerdes v. Iron Foundry Co., 124 Mo. 347.   In the last case cited this court lays down the general rule that ''municipal corporations are bound to keep their streets and highways in a proper state of repair, and free from obstructions, so that they will be reasonably safe for travel; and if, having notice of defects or obstructions, they neglect to repair or remove them, they will be liable for all injuries, provided that he who received the injury was himself, at the time, in the exercise of due care,'' citing:   Smith v. St. Joseph, 45 Mo. 449; Flynn v. Neosho, 114 Mo. 572.   (3)   Although the construction company did use ordinary care in piling said blocks, yet if, for some reason, they fell down upon the sidewalk, said company would still be liable, because, it being the tortfeasor, it was bound under the law to keep these blocks in order.   It was not only required to use ordinary care in piling the said blocks, but also to see to it that they were kept piled safely.   And that it was required to do, even without notice.   Carvin v. City, 151 Mo. 347; Benjamin v. Railroad, 133 Mo. 274; Frank v. St. Louis, 110 Mo. 526.

*Chas. W. Bates* and *Benj. H. Charles* for City of St. Louis, appellant.

A plaintiff can not plead specific charges of negligence and recover on other acts of negligence. McCarthy v. Rood Hotel Co., 144 Mo. 397. Plaintiff pleaded loose stones in the middle of the walk. The only fact, of which the city could possibly (under the evidence) have had any notice, was the regular ricks or piles on the outer edge of the walk, so high that they could not have caused any one to stumble and fall.

*Seddon & Holland* for Fruin-Bambrick Construction Company, appellant.

The evidence shows that the granite blocks handled by the construction company were placed on the edge of the sidewalk in regular and firm piles, and that any loose stones that were scattered on the sidewalk were deliberately placed there by hostile hands. There was no evidence that the said loose stones were scattered with the connivance or consent of the respondent construction company. If the law were as contended by appellant Hesselbach, then everybody who delivered stones for paving of streets and placed them on the street, would be liable if other parties threw the said stones on the sidewalk and caused pedestrians to trip thereon. Such is not, and can not be, the law. Moreover, even if this were the law, appellant Hesselbach could not recover on any such theory in this case, as she has made no such charge in her petition. . She does not charge that respondent Fruin-Bambrick Construction Company piled the stones on a portion of the sidewalk and subsequently failed to exercise ordinary care to gather up loose stones that were scattered around by other persons. On the contrary, the charge was simply and solely that the respondent construction company actually caused the said loose blocks upon which plaintiff stumbled to be placed on the sidewalk. In order to recover, appellant Hesselbach had to prove this

proposition. She could recover on this theory and no other. Therefore the court was entirely right in giving the instructions at the instance of respondent construction company, to the effect that no recovery could be had against said company unless the jury believed that the blocks were caused to be placed on the sidewalk by the said construction company. Of course, it was the duty of the respondent construction company to so pile the stones that they would not, by action of gravity, roll down and distribute themselves on the sidewalk. There is no evidence that such rolling happened, nor do the instructions criticised prohibit a recovery if the said stones were so negligently piled that they could be scattered thus by action of gravity. On the contrary, said instructions were upon the theory that if the respondent construction company made its piles of stones with ordinary care, and they were scattered by the deliberate act of hostile persons, appellant could not recover if she stumbled on the said loose stones. And this theory of the case that was adopted by the lower court was right, first, because, according to law, it was not the duty of the construction company under such circumstances to constantly gather up loose stones that were placed in a hazardous position by other parties; and, secondly, because plaintiff does not sue the construction company on the theory that it failed to gather up loose stones placed on the sidewalk in a dangerous position, by third parties, but on the theory that the construction company actually placed said loose stones in said dangerous position itself. Appellant Hesselbach can not recover on any theory not embodied in her petition. Chitty v. Railroad, 148 Mo. 64; MacManamee v. Railroad, 135 Mo. 440; Waldheir v. Railroad, 71 Mo. 314; McCarty v. Hotel Company, 144 Mo. 397.

MARSHALL, J.—This is an action for ten thousand dollars, damages for personal injuries, received by the plaintiff, on October 1, 1900, on the west side of

Broadway, just south of Penrose street, in the city of St. Louis, in consequence, it is alleged, of tripping over some paving blocks that had been negligently placed and allowed to remain on the sidewalk by the defendants. The suit was originally against the St. Louis Transit Company, Fruin-Bambrick Construction Company, and the city of St. Louis. But at the close of the plaintiff's case the plaintiff voluntarily dismissed the case as to the Transit Company, and the court sent the case to the jury against the other two defendants. The jury found a verdict in favor of the Fruin-Bambrick Construction Company, but returned a verdict against the city of St. Louis, for one thousand dollars. The city appealed from the judgment against it, and the plaintiff appealed from the verdict and judgment in favor of the Fruin-Bambrick Construction Company.

The negligence charged in the petition is, that prior to October 1, 1900, the St. Louis Transit Company, and Fruin-Bambrick Construction Company, "had caused to be placed on the sidewalk," at the place of the accident, "large stones which were dangerous obstruction to the use of said sidewalk by pedestrians lawfully passing thereon, and at the time of plaintiff's injuries there were no signal lights or other lights on or about said stones so placed upon said sidewalk to warn persons of the presence of said stones and the dangers therefrom, as required by the ordinance of the city of St. Louis in such cases, though it was after night and dark at the time of plaintiff's injuries as herein stated." It is then alleged that the said defendants were negligent in so placing and in not lighting the place, and that such negligence directly contributed to cause the plaintiff's injuries. It is then alleged that while the plaintiff was passing along said sidewalk, on October 1, 1900, after dark, "she came in contact with said stones so placed upon said sidewalk and was thereby caused to fall upon said stones and the sidewalk," and was seriously injured.

The negligence of the city is thus charged:

"And plaintiff avers that the two first named defendants were so using said sidewalk to place said stones thereon with the knowledge and permission of the city of St. Louis and that defendant city of St. Louis, by the proper officers and agents in charge of keeping the streets in proper repair, well knew of said obstructions upon said sidewalk, yet negligently permitted the same to exist, and thereby directly contributed to cause the plaintiff's said injuries."

The defendants pleaded separately, and their answers are general denials, coupled with a plea of contributory negligence.

The evidence adduced for the plaintiff showed that the St. Louis Transit Company had nothing to do with the matter, and so plaintiff voluntarily dismissed as to it. The evidence showed that for some time prior to October 1, 1900, Fruin-Bambrick Construction Company, under a contract with the St. Louis Railroad Company, had been engaged in the work of taking up the old cable road on Broadway and in putting down a new electric street railroad. In doing this work, the Construction Company took up the granite paving blocks, which were about six inches long, about four inches wide and about four inches thick, and piled them along the west side of the street, partly on the street and partly on the sidewalk. They were piled in "ricks," that is, a perpendicular wall of paving blocks was built up about three feet high near the outside of the sidewalk and a similar wall was built on the street, thus leaving a space of four or five feet between the two walls. Into this space the other paving blocks were loosely thrown. As thus built a smooth, perpendicular, granite wall, about three feet high, was located near the outside of the sidewalk. At the place of the accident the sidewalk was twelve feet wide, so that there was a space of at least eight feet between the granite wall so built and the buildings on the inside of the sidewalk. The sidewalk

was made of brick and was in good repair as far as it appears from the evidence. This condition had existed for several weeks prior to the accident. The plaintiff had lived at 4036 North Broadway for a year before the accident, and her house was on the east side of Broadway, and on the opposite side of the street from that on which the accident occurred. On the evening in question she went to see Dr. Orth, who lived on Penrose street, which is the street north of the block on which the accident occurred. In going, she went along the east side of Broadway which had no paving blocks piled on it, to Penrose street, and thence on that street to the Doctor's office. On returning she took the west side of Broadway. She knew the condition of the sidewalk, with reference to the pile of paving blocks, for she said she could see it from her window. She went south on the west side of Broadway until, she says, she was in front of Eckmeier's coal yard, when she says she fell over a stone that was lying on the sidewalk, and injured herself. No one was with her except her little daughter who was eleven years old. She says that there were a good many stones scattered pell-mell on the sidewalk, and that she had seen them there for over four weeks before the accident, and that there were no lights or danger lights there. After she fell she says two young men offered to help her to rise, but she felt bashful and raised herself up. On cross-examination she said, "Everything was full of stones. There were stones piled up and stones lying loose on the sidewalk. At Eckmeier's coal yard it was full of stones and all Broadway was full of stones on the west side," and that she fell at Eckmeier's coal yard, and there was no light there, and "that she could not tell whether she tripped against a loose stone on the sidewalk or a pile of stones." Later, she said it was loose stones she ran against.

The plaintiff's daughter corroborated her testimony. Mrs. Henry Kueha testified that she passed

along Broadway every day and that there were stones on the sidewalk, some in piles, some spread out over the pavement; that there more in some places than in others, and that in front of Eckmeier's was the worst place.

James Mulhern testified for the plaintiff, that he was an inspector for the street railroad. He testified to the piling of the granite blocks and said the pile extended about twenty-eight inches onto the sidewalk and that the balance of the sidewalk was left clear and unobstructed. He also testified that there was a street car strike going on in St. Louis at that time, and that boys and other persons would throw stones on the sidewalk; that anyone could see the pile of stones on the outer edge of the sidewalk, even at night; that lights were always put up every evening.

Dr. Carl Orth testified for the plaintiff, that he passed along Broadway several times a day and also at night, about the time of the accident; that there were blocks piled up and blocks scattered loosely on the sidewalk on the west side of Broadway, and that in front of Eckmeier's coal yard, there were loose stones lying on the sidewalk, and that such loose stones had been lying along the sidewalk at that place for about two or three weeks, and that there were no city lights there at the time. On cross-examination he testified that these piles of stone and loose stones on the sidewalk were not the same every day, but that they changed frequently, and that the abutting property owners frequently picked up the loose stones and threw them on to the piles.

Alois Eckmeier testified, for the plaintiff, that he owned the coal yard; that the stones were built up in piles, "and somebody walks down there, carried them off and threw them around loose," and that he had seen loose stones in front of his place for nearly a month; that there were lights put up, three in every block, but he did not know whether it was done on the night of the accident.

Mrs. Annie Ahrens testified for the plaintiff that she and Miss Dora Moritz found the plaintiff on the night of the accident, leaning up against the fence of the coal yard, and they took her home; that in addition to the pile of stones, there were a good many loose stones lying on the sidewalk where she found the plaintiff. Miss Dora Moritz testified for plaintiff substantially the same, and said you could see the loose stones on the sidewalk when you got near to them.

Peter Scheiperpeter testified for plaintiff that he lived at 4030 North Broadway; that there were loose rocks lying all over the sidewalk in front of Eckmeier's coal yard on the night of the accident, and that there had been loose rocks on the sidewalk at that place for nearly two months.

Miss Lizzie Uppelman testified for plaintiff that she lived at 4036 North Broadway, and knew the condition of the sidewalk in front of Eckmeier's coal yard on October 1, 1900, and that she passed there at about seven o'clock on that night; that there were no lights there; "that there were piles of rock in some instances and there were some scattered; that this condition had existed a good many weeks."

At the close of this testimony for the plaintiff the defendants demurred to the evidence, the court overruled the demurrers, and the defendants excepted.

J. S. Rude testified, for the defendants, that for a month prior to the accident he was a night watchman for the Fruin-Bambrick Construction Company, that he put up from 69 to 74 red lights between 3900 and 4600 North Broadway every night, without missing a night, while the work was going on; that the paving stones were piled in racks; that there was a street car strike going on at the time, and that boys and others would go out and throw down the piles of stones, and that "there were not men enough to keep them from doing it;" that he patrolled the street between the points stated every night; that every two or three days the foreman sent

men over the line to pile up the loose stones that were thus thrown down; that he piled up the loose stones when he found them, and there was a day watchman who did the same thing; that through all the time the people in that neighborhood made hostile demonstrations. On objection of the plaintiff the court would not permit the witness to tell the time or nature of such demonstrations.

David Olman testified for the defendant that he was in charge of the construction of the street railroad for Fruin-Bambrick Construction Company, that he never left work until a quarter to seven o'clock any evening between September 15th and October 2, 1900, and that he saw to it that from forty to sixty danger lights were put up every night between 3900 and 4700 North Broadway; that the stones were placed in piles five feet high and five feet wide, and so as not to obstruct the sidewalk; that the sidewalk was twelve feet wide, which would leave a clear space of seven feet; that a strike was in progress and people of that neighborhood made hostile demonstrations — the court refused to let him state their character, and that the piles of stones were often knocked down, and he had them put back in piles repeatedly, but it seemed to do no good.

Harry McGinley testified for the defendant that at the time of the accident he and Wayne Dunn, who owned the barber shop, No. 4015 North Broadway, and John R. Brady, were standing in front of the barber shop; and that the plaintiff and her daughter passed them going south, and that when she got about three feet south of the barber shop building, and when she was about six or seven feet from where they were standing, "it seemed as if her ankle turned and she set down;" that there were two large windows in the front of the barber shop, and two Welsbach gas lamps were burning on the inside of the shop; that he and Brady walked over to where she was and Brady started to help her up, but she got up and walked about fifteen feet and

stopped in front of the blacksmith shop which is in the same yard with the coal yard; that there were no loose stones on the sidewalk; that there "were stones piled in piles ,with the wall along the outside," but no loose stones.

Wayne Dunn testified for the defendant substantially the same as McGinley, and in addition said that a person passing along Broadway at that point could not fail to see that there was work going on there.

John R. Brady testified for the defendant that he and McGinley and Dunn were standing in front of the barber shop when the plaintiff passed; that she fell about eight feet south of the barber shop, and that there were no loose stones at the place where she fell; that he went over to help her up, and asked her·if she was hurt and she said she was not.

August F. Henke, a policeman, testified that his beat began at 4100 North Broadway; that he was in the neighborhood of the barber shop and coal yard four times before supper and four times after supper, his watch being from eleven o'clock forenoon to eleven o'clock at night; that on the west side of Broadway, south of Penrose street (4100), there was a pile of stones, and fifty feet south of that, near the alley, there was another pile, and south of the alley there was another pile, and another in front of the barber shop, and another on the north side of the telegraph post, then came Block's coal yard, then the wagon-maker's shop, and then Eckmeier's coal yard; that it was a part of his duty to see that there were no loose stones on the sidewalk, and nothing dangerous on the sidewalk, and that he found none such on the sidewalk on the day of the accident, and that he would have seen them if there had been any; that he passed the place of the accident at seven o'clock that evening and there were no loose stones there, but that the stones "were lined up" and were "all right."

George B. Tabb, a policeman, testified for the de-

fendants, that his beat was from 4100 to 4400 North Broadway and from Broadway to Eleventh street; that he knew the location of the barber shop and the coal yards; that the granite blocks were "ricked up," but that there were no loose rocks on the sidewalk.

The plaintiff's first instruction given told the jury that if the Fruin-Bambrick Construction Company "removed stones from the street and *piled* them on the west side of Broadway, on the sidewalk," and if the stones, "*as so placed* on said sidewalk, obstructed travel thereon and rendered the passage over said sidewalk dangerous for the plaintiff to pass along said sidewalk," and if on October 1, 1900, "said stones *were in such position* on said sidewalk, and that said street and sidewalk *were unlighted* at said place, and that the plaintiff was passing south on said evening, and that while so doing *she struck said stones* on said sidewalk with her foot, and fell and was injured," and that she was exercising ordinary care while walking along the sidewalk, then she was entitled to recover against the Fruin-Bambrick Construction Company, and if the "said stones, *so placed* upon the sidewalk, had been there in such condition a sufficient length of time to have enabled the city of St. Louis, by its agents, having charge of keeping the streets and sidewalks reasonably secure, to have known thereof by the exercise of ordinary care, and by such care to have rendered said sidewalks reasonably secure, and neglected to do so, then the city of St. Louis is also liable, and the verdict should be against both of the defendants."

The plaintiff's second instruction given told the jury that it was the duty of the city to keep the west sidewalk of Broadway in repair and in a condition reasonably safe for the passage of persons thereon, "and the fact, if true, *that a part of said sidewalk,* at the places mentioned in the evidence, was in repair and safe to walk upon, will not alone and of itself be a defense to the city in this case," but that if the plaintiff while

walking along the sidewalk "struck a stone or stones on said sidewalk and fell and was injured," and if "said stone or stones so on said sidewalk was an obstruction to people walking on said sidewalk and rendered such walking thereon dangerous," and if such condition had existed long enough for the city, by the exercise of ordinary care, to have known and corrected the same, the city is liable.

The plaintiff's third instruction is as follows:

"The court instructs the jury that if the city of St. Louis authorized Broadway and the sidewalks thereof mentioned in the evidence to be *used to place* rocks or stones thereon by the St. Louis Railroad Company, and if said *piling* or *placing* of said stones on the sidewalk necessarily and naturally rendered said sidewalk dangerous; and if the jury find from the evidence in this case, that the defendant Fruin-Bambrick Construction Company, did *pile* stones upon the west sidewalk of Broadway at the places mentioned in the evidence; and if the jury find from the evidence that said stones *as placed* upon said sidewalk by Fruin-Bambrick Construction Company were an obstruction to said sidewalk and rendered it unsafe for persons and the plaintiff to walk thereon; and if the jury further find from the evidence, that the plaintiff whilst walking along said sidewalk on October 1, 1900, stumbled and fell upon stones *so placed* upon said sidewalk and fell and was injured. And if the jury further find from the evidence that the plaintiff was exercising ordinary care at the time of her injury, then the plaintiff is entitled to recover against the City of St. Louis without further notice of the condition of said stones and said sidewalk." (The italics are added to mark the theory upon which the instruction is based.)

The court refused to instruct the jury, as requested by the city, that if the plaintiff was injured "by falling upon some *loose* stones" on the sidewalk, the city was not liable unless the particular stones upon which

she fell had been upon the sidewalk for a sufficient length of time to have imparted notice to the city and to have enabled the city to remove them.

The city also demurred to the evidence at the close of the whole case, but the court overruled the same.

At the request of the Fruin-Bambrick Construction Company, the court instructed the jury that if the plaintiff stumbled over loose blocks on the sidewalk, the Construction Company is not liable, unless the jury found that such loose blocks were actually placed or caused to be placed on the sidewalk by the Construction Company, and that if the jury were unable to find from the evidence whether such loose blocks were placed on the sidewalk by the Construction Company or by some other agency, the Construction Company is not liable, and that if the jury found that the Construction Company used ordinary care in piling such blocks, it discharged its full duty toward the plaintiff with respect to such piles, and that it was not the duty of the Construction Company to keep the sidewalk in a safe condition and that company was not liable if the plaintiff stumbled over loose blocks unless the company actually placed or caused the loose blocks to be placed on the sidewalk.

The jury found in favor of the Construction Company and against the city—assessing the damages at one thousand dollars, and the city appealed, as did also the plaintiff as to the verdict against her and in favor of the Construction Company.

## I.

The petition predicates a right to recover upon the ground that the Fruin-Bambrick Construction Company negligently placed large stones upon the sidewalk, which necessarily rendered it dangerous for persons to walk along the sidewalk, and that the city knew that the Construction Company was so using the sidewalk and *negligently permitted the same to exist and thereby directly contributed to cause the plaintiff's said injuries.''* Or,

otherwise stated, that the Construction Company was the active and the city was the passive agent that caused the injury. Under the petition, therefore, the negligence of the Construction Company was the first link in the chain of causation, and the city's negligence was the second link.

The plaintiff's instructions proceeded on the same lines, and pointed the true meaning and theory of the plaintiff's petition, by proceeding upon the basis that the act of the negligence of the Construction Company consisted in *piling* the stones on the sidewalk, and that the plaintiff struck her foot against the stones "so placed" or while "in such position," and that the act of negligence of the city was in permitting the Construction Company to *pile* stones upon any part of the sidewalk, and that such stones constituted an obstruction on the sidewalk, and that it was the duty of the city to keep the whole of the sidewalk clear of obstructions, and that it was liable even if it was true that a part of the sidewalk was in repair and safe for people to walk upon.

It will be observed that the petition does not expressly state whether the stones were piled up or scattered loosely upon the sidewalk, but that the plaintiff's instructions proceed entirely upon the theory that the stones were piled up, and that as piled they necessarily constituted a dangerous obstruction to travel on the sidewalk, and that it was the duty of the city to keep the whole sidewalk clear of obstructions, and that it was liable if there was any obstruction, upon any part of the sidewalk, even though there remained enough of the sidewalk, which was in good repair and free of obstruction, for a person to safely travel along it by exercising reasonable care. This was the theory of the petition and of the plaintiff's instructions. The plaintiff herself testified on direct examination that the stones were scattered pell-mell over the sidewalk. She never mentions there being a pile of stones on the sidewalk,

on her direct examination, so far as the abstract of the testimony shows. On cross-examination, however, she said there were big piles of stones heaped up on the sidewalk, and also that there were stones scattered all over the sidewalk. ''Everything was full of stones, . . . Eckmeier's coal yard, it was full of stones, and all Broadway was full of stones on the west side.'' Then she first said, ''that she could not tell whether she tripped against a loose stone on the sidewalk or a pile of stones,'' and later she said, ''that it was loose stones that she ran against,'' and ''that she had seen them on Broadway every day before she fell; that during the day they were scattered and sometimes loose; that these particular stones she had before seen in piles and sometimes they were lying around.''

The court refused to instruct the jury at the instance of the city that if the plaintiff tripped over loose stones the city was not liable unless they had been thus loosely upon the sidewalk for a sufficient length of time to impart notice to the city and to enable the city to have removed them, but at the request of the Construction Company the court instructed the jury that if it caused the stones to be piled up and some other agency scattered them loosely on the sidewalk and if the plaintiff tripped over a loose stone the Construction Company was not liable.

The result was a verdict in favor of the Construction Company and against the city, and in view of the character of the instructions, such a verdict is not a matter of surprise.

Under the theory of the plaintiff's petition and of the plaintiff's instructions, the plaintiff is not entitled to a verdict against the city unless it also gets a verdict against the Construction Company. Under the theory of the instructions given for the Construction Company, the jury was authorized to find a verdict against the city even though it did not find a verdict against the Construction Company. The instructions so given are nec-

essarily inconsistent under the allegations of the petition. The instructions given for the Construction Company do not correctly state the law, so far as the duty of that company is concerned. They tell the jury that the duty of the Construction Company ended when it piled the stones in a safe manner, and that it was no part of its duty to see that they were kept so piled, and that that company is not liable if some other agency scattered them. This is not the law. When anyone, under permission of the city, tears up a public street for the purpose of constructing a public improvement, or a public utility thereon, its duty does not end when it properly piles up the paving stones or places guards around excavations, but it is its continuing duty to use reasonable care to keep such stones safely piled and to keep such excavations properly guarded. Of course, if it sees that it is in such safe condition at the close of business every day, and some third person scatters the piles or removes the guard during the night, the company is not liable and neither is the city. [Ball v. Independence, 41 Mo. App. l. c. 475, and cases cited.]

But notwithstanding this error in the instructions given for the Construction Company, it does not necessarily follow that the judgment in favor of that company must be reversed, for the plaintiff wholly failed to make out a case against the Construction Company, and therefore the judgment is for the right party in this regard.

The plaintiff not only failed to introduce any substantial evidence to warrant a recovery against the Construction Company, but she failed to introduce even a scintilla of evidence which would warrant such a recovery.

The charge of the petition is that the Construction Company so placed large stones on the sidewalk as to constitute a necessarily dangerous obstruction to persons travelling along the sidewalk, while exercising reasonable care. There is absolutely no evidence whatever to support this allegation. The plaintiff made no

attempt to prove that the stones as piled up near the outer edge of the sidewalk necessarily constituted a dangerous obstruction on the sidewalk. And manifestly no one could so say. The sidewalk was twelve feet wide. The pile of stones took up from three to five feet in width. This left seven or nine feet of clear unobstructed sidewalk for people to travel over. The stones were piled up so that the outside of the pile was a perpendicular wall about five feet high on the outsides and the loose stones were thrown in between the walls. Such a construction is not necessarily dangerous. It is true sidewalks are intended for pedestrians. But it is also true that in order to transact business and to build houses, and to reconstruct streets and to build public improvements or public utilities in the streets, the sidewalks must of necessity, at times, be partly occupied by goods and materials to be used for such purposes. Without permitting such use it would be impossible to carry on business or to build houses, or to make improvements, in a city. Such a temporary use of a street, for such purposes, and for a reasonable time, is a lawful use. What is a reasonable time must be determined by the circumstances of each case. [Gerdes v. Foundry Co., 124 Mo. l. c. 354, and cases cited.] In this case the use was not shown to be for an unreasonable or unnecessary length of time, and it is not even alleged that such was the fact.

It is clear, therefore, that the plaintiff made out no case for the jury against the Construction Company, and hence the verdict is for the right party and must be affirmed as to the plaintiff's appeal against the Construction Company, notwithstanding the errors in the instructions given on behalf of that company.

In as much as the plaintiff predicated a right to recover against the city solely upon the proposition that the Construction Company had negligently obstructed the sidewalk and the city had permitted this obstruction to exist, and in as much as the plaintiff failed to obtain

a judgment against the Construction Company, and has not shown herself to be entitled to a judgment against the Construction Company, it follows that the plaintiff was not entitled to a judgment against the city, and the judgment in her favor against the city must be reversed.

This is the logical result of the case as made by the petition, and the plaintiff's instructions. The plaintiff did not predicate a right to recover against the city upon the theory that loose stones were allowed to remain on the sidewalk after the city was charged with notice thereof and had time to remove them. As pointed out, the right to recover was predicated solely upon the negligence of the city in permitting stones to be piled upon a part of the sidewalk by the Construction Company and in such a manner as to necessarily constitute a dangerous obstruction to travel along the sidewalk. Having elected to stand upon this claim of negligence, the plaintiff can not recover upon any other act of negligence, even if it be such that if properly pleaded it would have afforded a cause of action. [McCarty v. Rood Hotel Co., 144 Mo. 397; Chitty v. Railroad, 148 Mo. 64; McManamee v. Railroad, 135 Mo. 440; Cole v. Armour, 154 Mo. 333.]

In view of this conclusion it is unnecessary to consider the other errors assigned. The judgment of the circuit court is affirmed upon the plaintiff's appeal against the Fruin-Bambrick Construction Company, and reversed upon the appeal of the city of St. Louis from the judgment against it and in favor of the plaintiff. All concur.