L-M-S Incorporated and W. C. Henger v.
Joe O. Blackwell and David H. Baker.

No. A-2655. Decided October 4, 1950.
Rehearing overruled November 8, 1950.
(233 S. W., 2d Series, 286.)

*Carrington, Gowan, Johnson & Walker* and *Hubert D. Johnson,* of Dallas, for petitioners.

The Court of Civil Appeals erred in holding that petitioners were liable for the erection and maintenance of structures across the sidewalk and part of the street abutting the building site, even though said obstructions were not unreasonable and were erected with the permission of the city authorities. Also in their holding that the erection of said structures constituted a continuing breach of an implied covenant for quiet and peaceful enjoyment of the premises being held and occupied by respondents. American Construction Co. v. Seelig, 104 Texas 16, 133 S. W. 429; Bates v. City of Houston, 189 S. W. 17, writ of error refused; 1 Tiffany Landlord and Tenant, 532; 32 Am. Jur. 236.

*H. Louis Nichols,* of Dallas, for respondents.

In rebuttal of the above propositions respondents cite: Columbian Carbon Co v. Tholen, 199 S. W. 2d 825; Ellison v. Charbonneau, 101 S. W. 2d 310; Fields Sewerage Co. v. Bishop, 30 S. W. 2d 412; Dockum v. Mercury Ins. Co., 134 Texas 437, 135 S. W. 2d 700.

MR. JUSTICE SHARP delivered the opinion of the Court.

Joe O. Blackwell and David H. Baker, operators of the Little Stork Club, a night club in the City of Dallas, brought suit against L-M-S Incorporated and Henger Construction Company for damages to their business in the nature of lost profits. They

alleged that their loss had resulted from the conduct of petitioners in obstructing the sidewalk and a portion of the street adjacent to the premises where they were carrying on their business. The case was submitted to the jury on special issues, and based upon the answers of the jury to the special issues the trial court rendered judgment for respondents in the sum of $4,200.00. The Court of Civil Appeals affirmed the judgment of the trial court. 227 S. W. 2d 593.

From November, 1947, until August 19, 1948, respondents operated a night club, known as the Little Stork Club, at 1715 Commerce Street in the City of Dallas. L-M-S Incorporated did not own the premises known as 1709-1715 Commerce Street, in the City of Dallas, but was lessee from W. M. Alexander and others of the premises known as 1709-1713 Commerce Street under a 99-year lease, dated August 1, 1947, and was lessee from Harry K. Foster of the premises known as 1715 Commerce Street under a 99-year lease dated August 1, 1947. The rights of respondents were derived from a 5-year lease from Harry K. Foster in July of 1946 on the ground floor of the premises known as 1715 Commerce Street, and they had no lease from L-M-S Incorporated.

In the fall of 1947 petitioners secured from the City of Dallas a permit to erect a 15-story office building, to be known as the Mercantile Securities Building, on the premises situated from 1709 to 1713 Commerce Street. The City of Dallas also granted petitioners the right to erect and maintain certain barricades or fences across the sidewalk and into Commerce Street during the construction of the proposed office building. Petitioners erected in front of the building site a solid board fence, about seven feet in height, across the sidewalk west of respondents' leased premises. A fence was erected in Commerce Street so as to block off about one-third of the street in front of the building site, and a steam boiler, an elevator, and other kinds of machinery and building materials were placed in the street within such enclosure. The structures were maintained and used by petitioners continuously until the completion of the building in August of 1949.

The fence was erected to protect pedestrians from danger of falling objects and other building hazards during the construction of the 15-story building. The fence was situated wholly in front of petitioners' premises at 1709-1713 Commerce Street, and no part of it was in front of the building occupied by the Little Stork Club at 1715 Commerce Street. There is a 5-foot

alley between the Mercantile Securities Building and the building occupied by respondents. The immovable barricade or fence in front of the building site extended only seven feet into the street, and the portable barricade or fence extended out within three feet of the nearest streetcar rail from 8:30 A. M. to 4:30 P. M., Monday through Friday of each week. The steam boiler, the elevator, and the machinery were placed on the sidewalk area inside the immovable barricade. Permission to erect the obstructions across the sidewalk and into the street was granted petitioners by the City of Dallas, and petitioners conformed throughout the construction of the building to the conditions expressed in their permit obtained from the City.

Witnesses testified at length on the reasons why a portion of the sidewalk area had to be used for a steam boiler, a hoist to lift the structural steel and heavy materials, and they testified to the effect that the obstructions maintained in connection with this building project were not unusual or different from similar obstructions maintained in connection with prior buildings constructed in the Dallas business district and in connection with other multiple store buildings then under construction in Dallas.

The jury in answer to the special issues submitted found in substance that the fence and barricade erected and maintained by petitioners impaired the view of respondents' building from persons traveling on Commerce Street; interfered with the safety and accessibility with which the public could get to the Little Stork Club; and diverted travel and trade away from respondents' place of business; that respondents have suffered financial loss as a direct and proximate result of the erection of the fence and obstructions; that the erection and maintenance of the barricade and the construction of the Mercantile Securities Building materially interfered with the use of the property occupied by respondents for the purposes it was leased to them, and that such interference proximately caused respondents to suffer damage; that respondents abandoned the leased premises because of the action of L-M-S Incorporated in erecting and maintaining the obstructions and barricades of which complaint was made; and that respondents had been damaged by loss of net profits from the operation of their business, as a direct and proximate result of the construction and maintenance of the barricades between December 1, 1947, and August 1, 1949, in the sum of $4,200.00.

Among the issues submitted to the jury were the following:

"Special Issue No. 5: Do you find and believe from a preponderance of the evidence that the fence and obstructions erected and maintained by defendants constituted an unreasonable obstruction of said public street and sidewalk, in the light of the surrounding circumstances? Answer 'Yes' or 'No.' ANSWER: No."

"Special Issue No. 7: Do you find and believe from a preponderance of the evidence that the premises leased by the Plaintiffs was rendered unusable for the purposes for which they were leased by the action of the defendants in erecting the barricade or in erecting the Mercantile Securities Building? Answer 'Yes' or 'No.' ANSWER: No."

Petitioners filed a motion for an instructed verdict, and also a motion for judgment non obstante veredicto, and both motions were overruled.

Dallas is a home rule city, and has exclusive dominion, control, and jurisdiction over its public streets and alleys. It also has the power to control, regulate, and remove all obstructions "on any public street, alley or ground." Article 1175, secs. 16 and 18, Vernon's Annotated Civil Statutes. The charter of the City of Dallas provides in Section 151 as follows: "The Governening Body of the city shall have the power, by ordinance or resolution, to grant to any owner of property abutting upon the streets or other property of the city the use thereof or to go over or under the same in any manner which may be necessary or proper to the enjoyment of said abutting property by the owner; provided, that such use be not inconsistent with or does not unreasonably impair the public use to which said street or other public property may be dedicated."

■ Cities occupy an important place in our system of government. In many instances they have been created as arms of the State government, with authority to help protect and maintain the general welfare of the public. Article XI, Constitution of Texas; Title 28, Chapter 1, Article 961 et seq. Vernon's Annotated Texas Statutes. Owners of property or of a business within a city enjoy certain privileges, subject to certain fundamental rules or regulations. These privileges carry with them conveniences as well as inconveniences. It is undisputed that new buildings must be erected, and old ones remodeled or repaired. This is essential to the proper growth and general welfare of a city. The law recognized this rule when it gave cities the control of their streets.

During the repair or construction of a building, it naturally follows that material and obstructions must be placed on the sidewalk and street, and the city has the authority to control the use of the street for that purpose. It is true that this may temporarily interfere with the use of the sidewalk and street, and may subject those who occupy buildings in that vicinity to certain inconveniences and perhaps loss of business. This is one of the risks incident to a business located in a city. Frequently the loss of business and the inconvenience suffered temporarily are more than offset by the benefits derived from the larger number of people coming to that vicinity by reason of the new construction.

■ Petitioners, acting under the permit given by the City of Dallas, had the right to reasonably obstruct the street in constructing the 15-story building. Whether the placing of the obstructions in the street in this instance was reasonable or unreasonable was a question for the jury to determine under all the facts and circumstances of the case. American Construction Co. et al. v. Seelig, Tex. Civ. App., 131 S. W. 655 (aff. 104 Texas 16, 133 S. W. 429) ; City of San Angelo v. Sitas, 143 Texas 154, 183 S. W. 2d 417; Wood v. Mears, 12 Ind. 515, 74 Am. Dec. 222; Malkan v. Carlin, 93 N. Y. S. 378; Trester & Trester v. Kahn, 189 Wis. 60, 205 N. W. 826; Button v. City of Louisville, Ky., 118 S. W. 977; Culbertson v. Alexander, 17 Okla. 370, 87 Pac. 863, 10 Ann. Cas. 916; Callanan v. Gilman, 107 N. Y. 360, 14 N. E. 264, 1 Am. St. Rep. 831; O'Neill v. City of Port Jervis, 253 N. Y. 423, 171 N. E. 694; Moore & Savage v. Kopplin, Tex. Civ. App., 135 S. W. 1033; Friedman v. Snare & Triest Company, 71 N. J. L. 605, 61 A. 401, 70 L. R. A. 147, 108 Am. St. Rep. 764, 2 Ann. Cas. 497; Hesselbach v. City of St. Louis, 179 Mo. 505, 78 S. W. 1009; City of Chicago v. Robbins, 2 Black 418, 67 U. S. 418, 17 L. Ed. 298; McWhorter v. Dahl Chevrolet Co., 229 Mo. App. 1090, 88 S.W. 2d 240; Lindman v. Altman, 308 Mo. 187, 271 S.W. 512; Jones v. City of Ft. Dodge, 185 Iowa 600, 171 N. W. 16; Johnson v. City of Huntington, 80 W. Va. 178, 92 S. E. 344, 11 A. L. R. 1337; Raymond v. Kiseberg, 84 Wis. 302, 54 N. W. 612, 19 L. R. A. 643; Clark v. Fry, 8 Ohio State 358, 72 Am. Dec. 590; 39 Tex. Jur. 642; 64 C. J. S., Municipal Corporations, secs. 1708-1710, pp. 110, 119-120; 10 McQuillin Municipal Corporations, 3d Ed., p. 723, sec. 30.82; see Vol. 20, Texas Law Review, p. 399, for a discussion of the authorities, in an article entitled "Nuisance Without Fault," by William L. Prosser.

■ It is now generally accepted that every lease of land, in the

absence of express language to the contrary, raises an implied covenant that the lessee shall have the quiet and peaceful enjoyment of the leased premises, 27 Tex. Jur., p. 269; 51 C. J. S., Landlord and Tenant, sec. 323a. p. 1005.

Respondents claim that the placing of the obstructions in the street constituted a continuing breach of the implied covenant for the quiet and peaceful enjoyment of the premises leased by them, and that the obstructions materially interfered with their business, and as a result the premises were rendered unusable for the purposes for which they were leased.

Petitioners, as adjoining property owners, had the right temporarily to use the street in connection with the erection of the 15-story building, subject to the reasonable control of the municipal authorities. The entrance to respondents' night club was in no way disturbed, and customers could enter therein just as they could prior to the placing of the obstructions in the street. Some customers coming from a certain direction, in order to enter the premises, had to cross the street, instead of approaching in the old way, but the entrance to the night club remained unchanged. The obstructions were placed in the street only temporarily; they have been removed, and the condition of the street is as it was originally.

■ We have found no case where this Court has passed upon the precise question presented here. However, it has been held by the courts of this State that a recovery of damages would be sustained where a property owner or contractor unreasonably obstructed a street without authority from the city, causing damages to others within that vicinity. American Construction Co. et al. v. Seelig, Tex. Civ. App., 131 S. W. 655; Id., 104 Texas 16, 133 S. W. 429; American Construction Co. v. Caswell et al., Tex. Civ. App., 141 S. W. 1013, writ refused; American Construction Co. v. Davis, Tex. Civ. App., 141 S. W. 1019, writ refused. In other jurisdictions this question has been considered. In the case of Farrell v. Rose et al., 253 N. Y. 73, 170 N. E. 498, 499, 68 A. L. R. 1505, in discussing the right of an adjoining property owner to recover damages for temporary obstructions placed in the street, it was said: "The inconvenience and damage which a property owner suffers from these temporary obstructions are incident to city life and must be endured. The law gives him no right to relief, recognizing that he recoups his damage in the benefit which he shares with the general public in the ultimate improvement which is being made. The law, however, does afford him a relief, if the

city or a contractor interferes with the highway without authority; or, if acting legally, prolongs the work unnecessarily or unreasonably. The obstruction of streets and highways, or the work carried on in them of a public nature, must be reasonable and necessary for the public improvement which is being made." For an annotation of the authorities, see 68 A. L. R., 1505.

In the case of Putnam v. Boston & P. R. Corp., 182 Mass. 351, 65 N. E. 790, 792, in discussing the measure of damages caused by the closing of a street upon which petitioners' business was located, for a period of four months, in such a way as to deprive petitioners of access to the general system of streets and avenues, it was said: "If this access is only made less convenient, by the necessity of using some other part of the highway, instead of the part discontinued, their inconvenience in that particular is of the same kind as that of the public generally. But if their access from their property to the general system of public highways of the city or town is cut off altogether, the case is different. It has repeatedly been recognized that in such a case they may suffer special and peculiar damages." For an annotation of the authorities, see 120 A. L. R., 896, and 45 A. L. R., 534. Substantially the same rule prevails in the English courts. See Harper v. G. N. Haden and Sons, Ltd., 1 Ch. 298, 86 A. L. R., 89.

■ The facts do not bring this case under Section 17 of Article I of the Constitution, which provides that "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made" therefor. The City of Dallas, in authorizing petitioners to place the obstructions in the streets temporarily, acted under Article 1175 of the Revised Civil Statutes and Section 151 of its charter. Its charter authorized the granting of a permit to the owner of property abutting upon a street or other property of the city the use thereof, "provided, that such use be not inconsistent with or does not unreasonably impair the public use to which said street or other public property may be dedicated."

The City of Dallas did not undertake to condemn respondents' premises for any purpose whatsoever, and petitioners were not authorized by law to do so. The City acted under its police power in granting petitioners permission to place the obstructions in the street. The rule announced by this Court, which authorizes a person to recover damages as a result of having his property, or any part thereof, taken, damaged, or applied

for public use in condemnation proceedings, is not applicable here. Chicago, R. I. & G. Ry. Co. v. Tarrant County Water Control and Improvement District No. 1, 123 Texas 432, 73 S. W. 2d 55; Powell v. Houston & T. C. R. R. Co., 104 Texas 219, 135 S. W. 1153, 46 L. R. A. N. S. 1615; Dallas Cotton Mills v. Industrial Co. et al. (Tex. Com. Appls.), 296 S. W. 503; City of LaGrange v. Pieratt, 142 Texas 23, 175 S. W. 2d 243. This Court in Chicago, R. I. & G. Ry. Co. v. Tarrant County Water Control and Improvement District No. 1, supra, said: "It is quite elementary that, although the Constitution provides for compensation for property damaged or destroyed, it does not require compensation to be paid in all cases for consequential loss occasioned by the exercise of the police power. 16 Tex. Jur., pp. 870, 871, secs. 221, 222; Houston & T. C. Ry. Co. v. City of Dallas, 98 Texas 396, 84 S. W. 648; Gulf, C. & S. F. Ry. Co. v. Milam Co., 90 Texas 355, 38 S. W. 747; Cooley's Const. Lim. (8th ed.), Vol. 2, p. 1149."

In 50 C. J., p. 864, sec. 94, Public Use is defined as follows: "In general it may be said that a public use is one which concerns the general public or a portion thereof as distinguished from particular individuals or estates." In support of this rule many decisions are cited, including two Texas cases: Keller v. Corpus Christi, 50 Texas 614, 629, 32 Am. R. 613; Leathers v. Craig, Tex. Civ. App., 228 S. W. 995.

This Court held in the case of Housing Authority of City of Dallas et al. v. Higginbotham et al., 135 Texas 158, 143 S. W. 2d 79, 130 A. L. R. 1053, that the question of public use is a question for the courts to determine; that no broad rule has been announced in determining public use, but that each case has been determined upon its own facts and under the surrounding circumstances. In permitting petitioners to place the obstructions in the street, the City acted under its police and regulatory power, and this was for the individual benefit of petitioners, and not for the use and benefit of the public. The test of the right to place the obstructions in the street without liability for damages to respondents rested upon the issue of whether the action of the petitioners in placing the obstructions in the street was reasonable or unreasonable.

The temporary obstructions merely rendered access to the premises for the time less convenient, by compelling customers coming form a certain direction to cross the street in order to reach respondents' premises. It is true that the jury found that the obstructions impaired the view of respondents' premises,

interfered with the safety and accessibility with which the public could get to the night club, diverted trade from respondents' place of business, and caused respondents to suffer damage by reason of the obstructions. These findings would sustain a judgment against petitioners for damages, if petitioners, without authority had acted unreasonably in placing the obstructions in the street and rendering the premises occupied by respondents unusable. The jury found that, in the light of the surrounding circumstances, the fence and obstructions erected and maintained by petitioners did not constitute an unreasonable obstruction of the street and sidewalk. The jury also found that the premises leased by respondents were not rendered unusable for the purposes for which they were leased by the action of the petitioners in erecting the barricade or in erecting the Mercantile Securities Building. Therefore, under all the facts and the surrounding circumstances, the loss of profits due to the inconvenience caused customers by the obstructions was incidental to respondents' business.

The jury having found the controlling issues in favor of petitioners, the trial court should have rendered judgment in their favor. The judgments of the trial court and Court of Civil Appeals are reversed, and judgment is here rendered for petitioners.

Opinion delivered October 4, 1950.

Rehearing overruled November 8, 1950.