# AUSTIN TERM, 1883, 1884.

## R. D. COMPTON ET AL. v. WACO BRIDGE CO.[1]

### (Case No. 3942.)

1. ORDINANCE.— The city council of Waco adopted an ordinance directing the marshal to remove all obstructions from certain highways in the city, which prevented free access to certain fords on the river. *Held*, the council had the power to adopt the ordinance.

2. SAME — PUBLIC COMMONS.— The city council granted the right to the bridge company, for the term of twenty-five years, to the use of so much of the "reserve" or "common" as was necessary for anchorage of the bridge, keeper's house and stock pens. *Held*, that this did not authorize the bridge company to use the "reserve" or "common," so as to close the highways leading across the same to the fords, and that it did not authorize such use of the "reserve" by the company as to practically exclude the public therefrom.

3. CITY CHARTER CONSTRUED.— By act of the legislature amending the charter of the city of Waco, the chartered rights of the Waco Bridge Company were preserved intact. *Held*, that the act did not confer any additional power upon the company, but that its effect was to protect its chartered rights then existing.

4. SAME.— By the same act, complete power was conferred upon the city council over the commons and other property belonging to the city, and to alienate, sell and transfer the same, subject only to the conditions, if any, on which the property was held. The claim that this authorized the city council to dispose of the "reserve" is held not to be well founded, as by the deed conveying the "reserve" to the city it was expressly declared that it was for the sole use and benefit of the city.

5. PRESCRIPTION — FACT CASE.— See opinion for facts held sufficient to show a right to a ford, and way leading to and from it, by dedication and prescription.

6. CITIES AND TOWNS.— The city council would have power to open and extend streets to the river, so as to accommodate the inhabitants of the city and general public.

7. CHARTER CONSTRUED.— The bridge company's charter conferred exclusive bridge privileges for a distance of five miles up and down the river. *Held*, not to authorize the company to close up the existing public fords within that distance.

---

[1] This, and the two following cases, did not reach the reporter in time for publication in their proper places.

APPEAL from McLennan. Tried below before the Hon. L. C. Alexander.

This was a suit by the Bridge Company against Compton, then the marshal of the city of Waco, seeking to perpetually enjoin him from executing an ordinance of the city of Waco, which is as follows: "Ordered that the marshal be and is hereby instructed and authorized to proceed at once to remove any and all obstructions that may exist in Elm and Washington streets that in any way prevent the public from free access to and crossing the river at the points heretofore used as public fords," alleging that by virtue of its charter authorizing the construction and maintenance of a toll bridge across the Brazos river in the city of Waco, and by virtue of authority granted by the city council, that it had erected plank fences as wings to its bridge, which were necessary to the proper use of the bridge in crossing stock and to prevent the same from falling over the bluff of the river. These fences were erected on a reserve as public ground. And that neither Washington nor Elm street ran across the same to the river. Also claimed to own the land on the east side of the river opposite to the termini of Washington and Elm streets, and claimed the right to close the fords by reason of such ownership. That unless restrained Compton would remove its fences, etc.

The city of Waco made itself a party defendant, and by answer claimed, amongst other things, that the reserve had from the first been dedicated to public use. That the highways leading to the ferries had been recognized and used for a great number of years. That the grant from the city of Waco to appellee did not authorize the latter to erect the fences across these highways, etc.

Upon the trial a jury was waived and cause submitted to the court; judgment for appellee perpetuating the injunction.

*Harrison & Smith* and *Herring & Kelley*, for appellants, cited: San Antonio v. Lewis, 15 Tex., 388; Oswald v. Grenet, 22 Tex., 94; Williams v. Davidson, 43 Tex., 1; Dillon on Mun. Corp., vol. 2, §§ 444, 445, note 2; id., §§ 432, 434, 512, note 2; id., § 513, note 1; id., §§ 507, 556, 557; Green's Brice's Ultra Vires, p. 63, and note; Cooley's Const. Lim., *549, 545; 2 Smith's Lead. Cas., 170; Adams' Equity, 457, top note 1; State of Ala. v. Mayor, etc., of Mobile, 5 Port., 279; Covington v. McNickle, 18 Ky., 289; Gilmer v. Carrolton, 6 B. Mon., 680; Kennedy v. Covington, 8 Dana, 50.

As applicable to public easements, they cited: Oswald v. Grenet, 22 Tex., 94; 15 Tex., 118; Angell on Highways, secs. 131, 132, 134,

142, 143, 144, 145, 149, 162, 323, 137, 138, 154, 27, 28, 2, 3; Washb. on Real Prop., vol. 2, p. 293 (Book 2, marginal page 39); id., p. 277 (marginal page 27); 2 Dillon on Municipal Corporations, secs. 493, 500, 503, 505, 507, 556, 557; 2 Smith's Leading Cases, 170; 3 Kent, margin, 432, 451.

That the obstruction was a nuisance and should be abated, they cited: Williams v. Davidson, 43 Tex., 1; 3 Blackstone, ch. 1, p. 6; ch. 13, p. 220; 2 Dillon, § 520 and note 2, §§ 515, 521, 523; Angell on Highways, secs. 3, 5, 27, 143, 222, 224; State of Ala. v. Mayor, etc., of Mobile, 5 Port., 279; 7 Johns. (N. Y.), 106; State v. Woodward, 23 Vt., 92; Millhan v. Sharp, 27 N. Y., 611, 625.

*Sleeper, Jones* and *Kendall* and *Clark & Dyer*, for appellee, on the right of the city of Waco and the police court to grant the company the privilege claimed, cited: Piatt v. C. & C. Bridge Co., 8 Bush (Ky.), 31; Olcott v. Banfil, 4 N. H., 537; Langley v. Gallipolis, 2 Ohio St., 107; Com. v. Alburger, 1 Whart. (Pa.), 485–6; Cook v. City of Burlington, 36 Iowa, 357; Cook v. City of Burlington, 30 Iowa, 94; Newport v. Taylor, 16 B. Mon., 804–5; Chicago v. McGinn, 51 Ill., 266; Penn Township v. Perry Co., 78 Pa. St., 457.

On estoppel claimed against the city, they cited: Herman on Estoppel, 562; Grant v. City of Davenport, 18 Iowa, 179.

That no right of way or easement was shown, citing: Worth v. Dawson *et al.*, 1 Sneed (Tenn.), 59; Biddle v. Ash, 2 Ashm. (Penn.), 211; Stacey v. Miller, 14 Mo., 478; Hutto v. Tindall, 6 Rich. Law (S. C.), 396; Hogg v. Gill, 1 McMullan, Law (S. C.), 329; State v. Thomas, 4 Harr. (Del.), 568; Harding v. Jasper, 14 Cal., 642; Hervins v. Smith, 11 Metc. (Mass.), 241; Phipps v. State, 7 Blackf. (Ind.), 512; Angell on Highways, 150, 151; Sims v. Davis, Cheves (S. C.), 1.

The state having granted the bridge company the franchise, neither it nor the city could open other ways to avoid paying toll, without compensating the company, citing: Croton Turnpike Co. v. Ryder, 1 Johns. Ch., 611; Newburgh, etc., Turnpike v. Miller, 5 Johns. Ch., 101; Auburn Plank Road Co. v. Douglass, 12 Barb., 553; Smith v. Harkins, 3 Ired. Eq. (N. C.), 613; Townsend v. Blewett, 5 How. (Miss.), 503; Cheshire Turnpike Co. v. Stevens, 10 N. H., 133; Thompson v. N. Y. & Harlem R. R., 3 Sandf. Ch., 625; Piscataqua Bridge v. N. H. Bridge, 7 N. H., 35; High on Injunctions, §§ 580–582.

Watts, J. Com. App.— It becomes necessary in the disposition of this appeal to determine the question as to the power of the city

council to adopt the ordinance directing the city marshal to remove all obstructions from certain streets and ways. At the time this ordinance was adopted, the charter among other things empowered the council " To make regulations to secure the general health of the inhabitants and to prevent and remove nuisances. To open, alter, abolish, widen, extend, establish, grade, pave or otherwise improve, clean and keep in repair streets, lanes, avenues or alleys. To provide for the inclosing, improving and regulating all public grounds belonging to the city. And for regulating the use of the city and the river and banks thereof, and the commons adjacent thereto."

As between the legislature and the municipal government, the former has the paramount and unrestricted authority over the streets and alleys of the city as public highways; and by virtue of this authority it may authorize the placing of obstructions in these streets or legalize existing obstructions which might otherwise be deemed nuisances. The legislature may also delegate this power to the municipal authorities, and vest in them such authority and control over the streets and alleys as might be thought best for the general good.

The specific authority given to the council by the sections of the charter quoted above, when considered in conjunction with the general powers conferred by the charter, must be considered as ample authority to enable the city council to protect and preserve the streets, alleys, etc., for the use of the inhabitants and general public.

In Doublin v. Mayor, etc., of New Orleans, 1 Martin, 185, the supreme court of Louisiana held that the corporate authorities had the power to declare a house erected in a street a nuisance, and to cause its removal. The same court, in Herbert v. Benson, 2 La. An., 771, held that the corporate authorities had the power to cause the removal, at any time, of a building erected on common or public grounds, and that at the expense of the person who erected the same.

While Judge Dillon, in his work on Municipal Corporations, sec. 377, says: " A city charged by law with the duty of preventing obstructions of a river within its limits may, by its own act, and without proceeding by indictment, abate or remove anything which obstructs the free and public use of the river."

The same author, in section 95, says: " So where it is made the duty of a city to remove, as far as it may be able, every nuisance which may endanger health, the courts, unless the power be tran-

scended, cannot ordinarily interfere.    But the power to abate nui-
sances, like all other *municipal powers, must* be reasonably exercised,
etc.    And generally the judicial tribunals will not interfere with
municipal corporations in their internal police and administrative
government, unless some clear right has been withheld or wrong per-
petrated."

It is made an offense by article 405 of the Penal Code for any
person to obstruct any public road or highway or any street or
alley in any incorporated town or city.

That an obstruction placed in a street or other highway, without
authority of law, such as a building or a fence across the same, is a
nuisance, and may be removed by the local authority, would seem
to admit of no doubt.    But in view of the specific authority con-
ferred upon the city authorities of Waco, the right to exercise such
power seems to be indisputable.    Every person by a resort to the
courts of the country has a complete remedy to prevent an arbi-
trary or wanton exercise of that authority.    To force the municipal
authorities to a suit in the courts to secure the removal of obstruc-
tions from the streets would, to a considerable extent, defeat the
objects and purposes contemplated in the creation of municipal
governments.

We conclude that the city council had the power to adopt the
ordinance under consideration, provided the other facts existed
which would authorize the exercise of that power.

Without undertaking to determine how, or to what extent, an
easement might be obtained upon this "reserve," for that question
is not presented in this connection, the proposition for consideration
is, Did the municipal authorities grant to appellee a right to this
"reserve" to the extent asserted?    For the purposes of the argument
it might be conceded that the city council had the power to grant
to appellee a reasonable easement or charge upon a portion of this
reserve, for cattle pens and other things necessary in conducting its
business.    But the question remains, Did the council in fact grant
the right to the extent claimed?    No such intention is apparent
either from the language of the application or the resolution.    At
most it but conferred upon appellee the right to use such reasonable
portion of the "reserve" as would be necessary in conducting its
legitimate business.    This is more apparent when we consider the
purposes for which the grant was asked and made, the character
of the "reserve," and the extent of the power of the council over
the same.    The right of appellee to inclose this entire "reserve,"
and obstruct all the ways to the river except that which leads to its

own toll gates, was never contemplated by the council. It could not be reasonably supposed that the council would have attempted to exclude the general public from this "reserve," which had been conveyed to the city as a common, and for the use of the public. The subsequent action of the council in adopting the ordinance, directing the removal of the obstructions from the streets or ways leading across this reserve to the river, is at least persuasive that it was never intended that such obstructions should be placed across these ways. Appellee's real object in extending the plank from across the way leading from the foot of Washington street to the river does not admit of much question. It was to prevent the public from crossing the river at the ford, and to compel all to pass over its bridge.

From the evidence as disclosed by the record, this way from Washington street to and across the river, and along what is now known as Elm street, has long been an established way, continuously used by the public, and recognized as such by all.

At one time there was an established public road leading out east from the river, as it seems, along this way, but after the completion of the bridge it was discontinued as such by the county court. But the public thereafter, as theretofore, continued to use it, and the owners of the land over which it passed, in their conveyances recognized it as a public way. In fact it seems that no one ever questioned the right of the public to its use until appellee constructed the plank fence across the way on the west side of the river.

So far, then, as the obstructions at this point are concerned, we are of the opinion that they were unauthorized, and that the city council rightfully ordered their removal.

Appellee, however, claims that its asserted right to the exclusive use of this reserve was confirmed by the legislature in the act constituting the last charter of the city, passed in 1871. The two sections relied upon to support this proposition are these:

"*Eighth.* To establish, erect and keep in repair bridges, culverts and sewers, and regulate the use of the same; *provided*, that nothing herein shall be so construed as to give any power over the Waco suspension bridge across the Brazos river, or to interfere with the chartered rights of the Waco Bridge Company in any respect whatever; in all other respects, however, leaving the jurisdiction the same over the said bridgeway as in other portions of the corporation."

"*Thirty-seventh.* To exercise complete and perfect control over the commons and all the property belonging to the city, real or

personal, whether lying within or beyond the limits of the corporation created by this act, and the same to lease, sell, transfer, and dispose of, either absolutely or within limitation, subject only to the conditions, if any, on which the property is held."

The proviso in the first of these sections was intended as a limitation upon the powers conferred upon the council in the first part of the section. It was intended thereby to protect the bridge and chartered rights of the company from the powers therein conferred upon the municipal government. No additional chartered rights were thereby conferred upon the bridge company. Such was not the intention of the proviso, even had it been within the constitutional power of the legislature to have done this in an act to incorporate the city. Its sole object was to protect the existing rights of appellee conferred by its own charter.

As to the other section, if, as seems, it is relied upon as confirming a grant by the city to appellee of a right to use the entire "reserve," or any considerable portion, so as to exclude the public from the free enjoyment of the same, it has heretofore been seen that no such grant was in fact made by the city council. Besides this, the exercise of control over the reserve, conferred by that section, is subject to the limitations and conditions upon which the city held the property. It will not be seriously contended that, under the terms of the conveyance from De Cordova and Ware to the commissioners, the city council had any authority to sell, lease or otherwise dispose of this reserve; for the language of the deed is, "the following described property to be used solely for the purposes designated, but to be held for the use and benefit of the town of Waco, viz.: Ten feet round the heads of the large springs known as the Waco springs; the public square; the reserve in front of the town facing the Brazos river; the streets and lanes or alleys running through the town and farming lots." In a subsequent portion of this deed other property is conveyed to the commissioners, with express power conferred upon the city to sell and convey the same. But we search the deed in vain for the remotest intimation that it was intended to confer any such power upon the city with respect to the public square, streets, lanes or alleys, the spring or reserve on the river front. These in fact all occupy the same *status*, for by the terms of the deed it seems clear that they were all dedicated by the grantors to the public use.

Hence, the legislature did not undertake or intend to confer any power upon the city council, with respect to this reserve, inconsistent with the intention of the grantors, manifested by their deed to the

commissioners.   How far this reserve might be subjected to ease-
ments by the exercise of the right of eminent domain need not be
here considered, as no such right is asserted.   In this connection it
is sufficient to say that no additional right, not theretofore lawfully
exercised under its own charter, was conferred upon appellee by
these sections of the city charter.

As to the ford below the bridge and opposite to the terminus of
Jackson street, and access to it from the west side of the river, it
appears from the evidence that these had been constantly used for
over thirty years by the public, at the time appellee placed the ob-
struction in the way on the east side of the river, so as to prevent
access to the ford from that direction.

Even before the earliest settlement by white men it seems that
the Indians, while yet their camp-fires blazed along its banks, had
by use established this as a ford, where the tribes crossed and re-
crossed the Brazos at will.   And when the Indian, obedient to his
fate, moved on toward the setting sun, and the white man settled the
country, this ford was continued, and continuously used as a public
crossing, interrupted only by high water, until 1876.

It would seem that the public by constant use had secured a right
to this ford, by presumptive dedication, and also by prescription.

But as to the approach to this ford from the east side of the river
the evidence is uncertain and doubtful.   We are unable to deter-
mine whether there be one or two ways, when either was estab-
lished, or how long either has been in use by the public.

At one time the adjoining land-owners seemed to have recognized
the right of the public to this way, by fencing the land on either
side of the road.   Subsequently, the date not appearing, this lane
was closed and a new road opened.   It seems that this road has been
changed several times, but as to the extent of the change the record
is silent.   If, in fact, notwithstanding slight changes, the road re-
mained substantially the same, then from the long continued use,
without objection, upon the part of the owner or owners of the
land, a dedication to public use might be presumed.   Appellee
would not have the right to obstruct any public way to the ford
secured either by dedication or prescription.   As to whether such
way does or not exist is a question of fact for the court or jury, to
be determined from the evidence.

Under the existing charter, it would seem that the city council
would have the power to open and extend such streets to the river
as might be deemed necessary or convenient to the inhabitants or
the general public.

It is also claimed that as appellee's charter confers upon it exclusive bridge privileges for a distance of five miles up and down the river, and as the charter also prohibits the establishment of any other bridge or any ferry within that distance, it follows that all existing public fords within that distance were thereby prohibited and subject to be closed by appellee.

Such exclusive privileges as are conferred by appellee's charter approach very nearly the extreme limit of legislative power, and such legislation is so far antagonistic to the spirit of free and enlightened republican government that it is not entitled to any liberality of construction or special favor from the courts.

Certainly it could not have been the legislative intent that all the fords for a distance of ten miles along the Brazos, the free and uninterrupted use of which had theretofore been enjoyed by the public, should be considered as interdicted, outlawed and subject to be closed at the whim or caprice of appellee.

We conclude, and so report, that the judgment of the court below ought to be reversed and the cause remanded for another trial.

REVERSED AND REMANDED.