# DECEMBER, 1944

## CITY OF SAN ANGELO ET AL V. ARTHUR SITAS.

No. A-68. Decided April 26, 1944.
Rehearing overruled December 6, 1944.
(183 S. W., 2d Series, 417.)

*Collins, Jackson, Snodgrass & Blanks,* of San Angelo, for the City of San Angelo, *Upton, Upton & Baker,* of San Angelo, for R. L. Henderson, *Thompson, Knight, Harris, Wright & Weisberg,* and *Pinkney Grisson,* all of Dallas, for C. C. McBurnett, all petitioners.

It was error for the Court of Civil Appeals to hold that Martha E. Henderson, or her estate, could be held liable for the injury complained of by the plaintiff in this case, because the evidence showed that the said Martha E. Henderson, or her estate had for thirteen years been leasing said building to McBurnett, who had subleased to a barber, which barber had erected the sign that plaintiff ran into, the erection of which and its dangerous condition was unknown to the Martha E. Henderson or the executor of her estate, and she was not liable by reason of having executed a renewal of that lease. Granberry v. Texas Public Service Co., 171 S. W. (2d) 184; Werner v. Trout, 2 S. W. (2d) 525; Brinlee v. Taylor Grain Co., 166 S. W. (2d) 724.

It was error for the Court of Civil Appeals to hold that under the disputed facts the barber sign was a nuisance per se and that the city's liability therefor could be imposed without proof of negligence. McCutcheon v. Wozencraft, 255 S. W. 718; 39 Texas Jur., 643.

It was error for the Court of Civil Appeals to hold that the landlord of the entire premises abutting on the sidewalk is personally liable for an injury caused by an obstruction extending from the wall of side building and placed there by a subtenant without the consent of said landlord and in which the landlord did not participate. Ward v. Hinkelman, 37 Wash. 375, 79 Pac. 956; Wright v. MacDonald, 88 Texas 140, 30 S. W. 907; Grapotte v. Adams, 130 Texas 587, 111 S. W. (2d) 690.

*Sedberry & Williams* and *I. J. Curtsinger,* all of San Angelo, for respondent.

The trial court erred in rendering judgment for the defendant city, and for Henderson and McBurnett on their contention that the barber sign did not constitute a nuisance; that the sign was properly erected and maintained, and that said defendant were not guilty of negligence, and the Court of Civil Appeals correctly reversed said judgment. Acme Laundry v. Weinstein, 182 S. W. 408; Burrows v. Texas & N. O. Ry. Co., 54 S. W. (2d) 1090; Rainey v. Red River, T. & S. Ry. Co., 99 Texas 276, 89 S. W. 768.

MR. JUDGE BREWSTER, of the Commission of Appeals, delivered the opinion for the Court.

This is a suit for damages for personal injuries brought by Arthur Sitas, respondent, against the City of San Angelo, R. L. Henderson and C. C. McBurnett, petitioners. Henderson was sued individually and as independent executor of the will of Martha E. Henderson, deceased. One J. M. Joiner was originally a defendant but the suit was dismissed as to him before trial, upon suggestion of his death. At the conclusion of the testimony, the trial court discharged the jury and rendered judgment for petitioners. The Court of Civil Appeals reversed that judgment and remanded the cause. 177 S. W. (2d) 85.

The Hendereson estate owned the St. Angelus Hotel property, in San Angelo. McBurnett operated the hotel as lessee. As a part of the hotel property and immediately adjoining the hotel on the east was a one-story structure designed for use as a barber shop. Joiner began operating this shop about January 1, 1921, and at the time in question here was operating it under a five-year sublease from McBurnett dated January 1, 1937.

Bolted to the east wall of the hotel proper, which is also the west wall of the barber shop, was an electric barber sign, placed there in 1927. Joiner described this wall as "part of it is my wall and part the hotel." He said the sign was of "octagon shape." It was in a metallic frame which came to an apex, or point, over the sidewalk. This frame held glass panels both on the west and east sides of the sign thus forming a case for the sign. The bottom of the sign was 3.9 feet from the sidewalk. Measuring from the wall, the sign projected 12 7/8 inches over the sidewalk; measuring from a marble footboard which extended along the entire width of the hotel and barber shop at a height of 1.74 feet, the sign projected only 11 1/4 inches over the sidewalk.

Shortly after 10 o'clock, on the night of May 23, 1940, Sital came out of the hotel on the barber shop side and found that "it was pouring down rain." After a few minutes wait under the canopy over the hotel entrance, he decided to "make a run" for his automobile, which was parked angling across the street. To get the protection of the building as long as possible, he decided to go east along the sidewalk until he got opposite his car. So he proceeded, in "a trot—not running and not walking," along the sidewalk "at least a foot from the wall" until his left shoulder struck the barber sign, when he fell to the sidewalk and sustained the injuries of which he complains in this suit.

On April 4, 1912, the City of San Angelo passed "an ordinance, prohibiting swinging signs, sign boards, banners and other advertisements over, along or upon sidewalks, * * and providing for the removal of same now in use, declaring the same a nuisance, and fixing a penalty for violation," which was as follows:

"1. It shall hereafter be unlawful for any person, persons, firm or corporation to place, erect or maintain any swinging sign, sign-board, sign-post, banner or other advertisement over, along or upon any street or sidewalk in the City of San Angelo, which shall project beyond the property line of the adjoining premises for more than twelve inches.

"2. All swinging signs, sign-boards, sign-posts, banners or other advertisements now placed, kept or maintained over, along or upon any street or sidewalk in the City of San Angelo, contrary to the provisions of the foregoing section of this ordinance, are hereby declared to be nuisances, and shall be removed therefrom by the owners thereof within fifteen days from the time this ordinance shall take effect.

"3. It shall not be held to include electric signs not over twelve inches in diameter, provided that such electric signs shall be securely fastened to the awning or building and at least seven feet from the sidewalk grade.

"4. Any person, persons, firm or corporation who shall violate any section or provision of this ordinance shall be fined in any sum, not less than five nor more than two hundred dollars."

This ordinance was offered in evidence by petitioners, evidently on the theory that it permitted the erection and maintenance of the sign. So the City contends, in its sole point of error,

that the Court of Civil Appeals erred in holding that because there was testimony tending to show that the sign was a dangerous obstruction of the sidewalk, it was a nuisance per se, without regard to the ordinance.

■ There being no claim that the ordinance is for any reason invalid, we think that whether the sign was a nuisance must be determined under the ordinance. This court has said that the Legislature has paramount and unrestricted authority over the streets of a city as public highways, and that by virtue of this authority it may authorize the placing of obstructions which might otherwise be deemed nuisances. Compton v. Waco Bridge Co., 62 Texas, 715. As expressed by a standard writer, "Of such acts, done pursuant to the authority given, it cannot be predicated that they are nuisances: if they were such without, they cease to be nuisances when having the sanction of, a valid statute." Dillon on Municipal Corporations (5th Ed.), Vol. III, Sec. 1128. We have held, further, that "the Legislature may also delegate this power to the municipal authorities, and vest in them such authority and control over the streets and alleys as might be thought best for the general good." Compton v. Waco Bridge Co., supra. See 25 Am. Jur., Highways, Sec. 294; and 39 Tex. Jur., Streets, Sec. 94. And when this power is delegated to the cities the result is that "where a thing is of a character that it can be a nuisance and can be an annoyance, then it is almost always for the local authority which has the power to make the by-law to say whether it shall be considered to be a nuisance and an annoyance in the particular locality in respect of which they make the by-law." McQuillin, Municipal Corporations (2nd Ed.), Vol. 3, Sec. 958, p. 151, quoting from an English case. That power the Legislature has delegated to the City of San Angelo, as a home rule city. By statute it is empowered (1) to exercise exclusive dominion and control over its public streets, (2) to control, regulate and remove all obstructions on any public street, (3) to define all nuisance and prohibit the same within the city, and (4) "to license, regulate, control or prohibit the erection of signs or bill boards as may be provided by charter or ordinance." Art. 1175, R. S., 1925, Secs. 16, 18, 19 and 24.

■ It is apparent from the language of the statute that the Legislature did not consider that every obstruction of a street or sign erected over a sidewalk is to be condemned as a nuisance per se, although it may result in private injury in some cases. Otherwise, it was idle to say that a city may "control" and "regulate" as well as "remove" all obstructions, or that it may

"license," "regulate" and "control" as well as "prohibit" the erection of signs; it would have been enough to say that it may "remove" all obstructions and "prohibit" all signs.

It is likewise apparent that in passing the ordinance above quoted the City of San Angelo undertook the responsibility delegated to it by the Legislature and that, in doing so, it did not attempt to prohibit the erection of all signs. Rather it sought "to license, regulate and control" certain signs; and no sign so licensed can be regarded as a nuisance. It prescribed limitations within which a sign may be erected and maintained; so, in the absence of any attack on the validity of the ordinance, we cannot go behind its terms and say that the sign in question, if obedient to those limitations, is a nuisance.

■ The signs it did prohibit are described in section 1, of the ordinance, as "any swinging sign, sign-board, sign-post, banner or *other advertisement*" placed or maintained over any sidewalk *which projects "beyond the property line of the adjoining premises for more than twelve inches."* (Italics ours.) The only exceptions to that prohibition are found in section 3, by reference to which it will be observed that to be excepted from the terms of section 1, a sign (1) must not be over twelve inches in diameter, (2) shall be securely fastened to the awning or building, and (3) *shall be at least seven feet from the sidewalk grade.* Since it is undisputed that the sign in question was only 3.9 feet from the sidewalk, it is obvious that it does not meet all three of the conditions named. Therefore it cannot be held to be excepted from the provisions of section 1, and whether it is a nuisance must be determined by the language of that section.

■ By the use of the phrase "other advertisement" in section 1, the ordinance undoubtedly meant to make it unlawful to erect or maintain any sign over the sidewalks if it projects more than twelve inches from the property line. We think the testimony presented an issue of fact as to whether the sign did project for that distance. With Sitas contending that the line of projection should be measured from the main wall and the petitioners asserting that it should be measured from the marble slab, a licensed engineer, who made measurements and drew a plat of the sign, the sidewalk and the side of the hotel and barber shop showing their relative locations and distances, testified that the sign projected 12 7/8 inches from the main wall of the building, to which it was attached, and 11 1/4 inches from the marble slab, but that he did not know the location of the property line at that point. On direct examination McBurnett testi-

fied, without objection, that it had always been his "understand-. ing that the property line was the line parallel outside with the marble slab" and that no one had ever contended otherwise. However, on cross examination, when asked whether the main wall was on the property line, he replied, "I couldn't tell you; it is supposed to be. The city engineer located it." He further testified that he had the lot surveyed when he located the hotel building; that he knew he was "supposed to build on the property line"; that he would not attempt to locate his lot line "out in the street"; and that "I suppose it was surveyed the best the city could survey it." If the wall marked the property line, the sign projected more than twelve inches over the sidewalk and was a. nuisance under the express terms of the ordinance; on the other hand, if the marble slab marked the property line the sign did not project more than twelve inches and was lawfully placed and maintained over the walk. So the true location of the property line was an issue for the jury to determine. If it is established at another trial that the sign did not project more than twelve inches from that line the petitioners are not liable.

■ But if it should be determined that the sign projected more than twelve inches from the property line, then will arise the issue as to whether the city had notice of its existence, because the rule is that since the city did not erect the sign it is not liable, unless it had notice of the sign's existence and a reasonable opportunity to remove it. Such notice may be express or implied. City of Fort Worth v. Johnson, 84 Texas, 137, 19 S. W. 361; Hanks v. City of Port Arthur, 121 Texas, 202, 48 S. W. (2d) 600; Anno. 2, 45 A. L. R., p. 802.

■ Passing over the matter of actual notice, we think there is testimony in the record which would support a finding of implied notice, that is, that the city, in the exercise of ordinary care, could have discovered that the sign was being unlawfully maintained, in time to have caused its removal. The sign had been up approximately thirteen years. Sam Lawhorn, city manager of San Angelo on and before May 23, 1940, testified that he knew about the sign at least in February, March and April, of that year; that he knew of no effort by the city to remove it or of any inspection made by the city to determine the extent of its projection over the sidewalk; and that, at the time of trial, there was about eighteen barber signs sticking out from the wall "in the main part of town."

This disposes of the propositions presented by the city's point of error. If it is established that the sign is not within the

permissive terms of the ordinance, the city is liable to Sitas for such damages as were proximately caused him thereby, provided the city, in the exercise of ordinary care, could have discovered the sign in time to cause its removal before he was injured.

Cases like Dozier v. City of Austin (Civ. App.), 253 S. W., 554 (er. dism.), Joseph v. City of Austin (Civ. App.), 101 S. W. (2d) 381 (er ref.), and Radford Groc. Co. v. City of Abilene et al (Com. App.), 34 S. W. (2d) 830, are not contrary to our conclusion because they involve a physical appropriation of public property for private use and an actual obstruction of the street surface by the erection of structures thereon; they involve the attempted surrender by a city of its authority over portions of its streets. No such proposition is presented by the facts of this case. Nor are we here dealing with something inherently dangerous to people using the streets. We have an overhead encroachment which in most municipalities is recognized as lawful by regulations prohibiting its extension into the street more than a given distance. McQuillin, Municipal Corporations (2nd Ed.), Vol. 4, Sec. 1445.

Henderson's one point of error complains of the holding of the Court of Civil Appeals that the owner is liable in damages for the injuries to Sitas proximately caused by the sign, solely because of the fact that she executed a renewal lease to McBurnett after the sign was erected.

When the property was originally leased to McBurnett the sign was not there. It was not erected until 1927, but on April 9, 1929, the owner renewed the lease by written instrument for a term of ten years to begin July 1, 1930, so it was in effect when Sitas was injured. As already stated, the sign was attached to the partition wall between the hotel property, which was at all times in McBurnett's possession and under his control, and the barber shop, which he had subleased to Joiner.

Had the sign been up when the original lease was made to McBurnett, the question as to the liability of the owner would be foreclosed by previous decisions of this court. It is said in Perez v. Rabaud, 76 Texas, 191, 13 S. W., 177, 7 L. R. A., 620, "The authorities are abundant sustaining the doctrine that the owner can not create a nuisance on his premises and relieve himself of liability to a third person injured thereby by leasing. It is also the law that he would be liable to a stranger where the defective structure causing the injury is on the premises when

they are leased." To the same effect are Marshall v. Heard et al, 59 Texas, 266; O'Connor v. Andrews, 81 Texas, 28, 16 S. W., 628; Paternostro v. Bradley et al (Civ. App.), 262 S. W., 896; Texas Co. v. Freer (Civ. App.), 151 S. W. (2d) 907 (er. dism.); 11 Texas Law Review, 253; 27 Tex. Jur., p. 346, Sec. 205; 32 Am. Jur., Landlord and Tenant, Sec. 650; 36 C. J., p. 241, Sec. 949.

But it is argued that the doctrine stated has no application here because the hotel property was already under lease to McBurnett when the sign was erected and all the owner did thereafter was to re-lease the property to him, without knowledge of the presence of the sign. We have found no Texas case on this precise point, but the weight of authority seems to be contrary to the contention. See 36 C. J., p. 241, Sec. 949. There is a comprehensive annotation of the question in 49 A. L. R., p. 1418, wherein it is stated: "Generally, a landlord who leases or relets premises which at the time of such lease or reletting are in the possession of the tenant, and on which a dangerous condition exists, is liable to one injured during the subsequent term because of this condition, notwithstanding the fact that, at the time of the original lease to the tenant in possession, the premises did not contain a dangerous condition." Cases supporting the statement are cited from the superior courts of Arkansas, Illinois, Kentucky, Missouri, New Jersey, New York, Oregon, Pennsylvania, South Dakota, West Virginia and England. Then, at page 1425, follows this statement: "In the cases cited above to the general proposition, the courts seem to hold that, *even if the landlord did not have actual knowledge of the dangerous condition of the leased premises, he should be charged with constructive knowledge, since, at the expiration of the lease, he has an opportunity to go upon the premises and examine their condition;* and if he does not do so, and leases or relets the premises without making them safe, he is at fault, and should be charged with injuries to third persons due to the dangerous condition of the leased premises." (Italics ours.) Then are cited cases from four jurisdictions which require that the landlord should have *"actual knowledge* of the dangerous condition existing upon the leased premises," before he can be held liable under the circumstances stated.

Since we are definitely committed to the proposition that the owner is liable for injuries caused by a nuisance on the premises when they are originally leased, we see no sound reason why we should not follow the weight of authority and hold that he is likewise liable for a nuisance which is erected on the property

after the original leasing and is on the premises when they are re-leased. In either case he has an opportunity to inspect before the letting and to discover the nuisance, so we think it is fair to say that he is charged with knowledge of what an inspection would show: the presence of the nuisance; and we so hold. In this holding we assume, of course, that the sign projected more than twelve inches from the property line, in violation of the ordinance.

What we have said disposes also of McBurnett's points of error. Aside from the effect of his reletting the barber shop to Joiner while the sign was being maintained, it appears that he was the tenant in actual possession and control of the hotel, to the wall of which the sign was attached. That he had actual knowledge of the sign's presence on the wall long before Sitas collided with it is the only fair deduction to be drawn from his testimony. For example, when asked if he found out about the sign after the hotel's engineer installed it, he replied, "I suppose I did, I paid no attention to it." In response to the direct question as to whether he found out about it shortly after it was placed there, he said, "I wouldn't be surprised if I didn't." Then, asked if he told the engineer to take the sign down, he answered, "No, there was no reason to take it down; there are signs all over town and they are perfectly legitimate." So, if the sign violated the ordinance, McBurnett is liable, since he knew it was being maintained on the wall, at least a part of which was under his immediate and direct control; and he failed in his duty to have it removed.

The judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court April 26, 1944.

Rehearing overruled December 6, 1944.