**Joe LEDERMAN, Appellant,**

v.

**E. B. CUNNINGHAM et al., Appellees.**

No. 5064.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 22, 1955.

Rehearing Denied Oct. 12, 1955.

Carl Waldman, Billy Sanders, Beaumont, for appellant.

Orgain, Bell & Tucker, Beaumont, for appellees.

ANDERSON, Justice.

The suit is for damages for personal injuries alleged to have been sustained by the appellant, Joe Lederman, when he fell while entering the place of business of E. B. Cunningham in Beaumont on November 4, 1952. Both Cunningham and the owner of the building in which he conducted his business, Seawillow Keith Estate, were sued. Negligence and maintenance of a nuisance were charged as the basis of liability, but the case went to trial on the negligence theory only, a defense motion to strike the paragraph of plaintiff's petition charging maintenance of a nuisance having been sustained. Trial to a jury resulted in an instructed verdict and a judgment in favor of the defendants. The plaintiff has appealed.

The plaintiff claims that what he calls a pedestrian's ramp, in the doorway of the building involved, caused him to fall. This so-called ramp was a concrete fill that bridged the difference in elevation between the higher level of the concrete floor of the building and the lower level of the concrete sidewalk on which the building fronted. It extended completely across the doorway, which appears to have been some eight or ten feet wide, and was set into the doorway so that no part of it protruded beyond the face of the building. Its surface sloped at an angle of 45 degrees, and struck the sidewalk at from four to six inches in front of where it would have if it had been dropped vertically from where the floor level terminated, and was from five and a fraction to eight and a fraction inches in length between its lower and upper edges, depending on whether the difference in elevation between the floor level and the sidewalk level was four inches, as one or more witnesses estimated, or was not less than four nor more than six inches, as indicated by estimates that it was from four to six inches. The surface was not glazed nor more than ordinarily slick, but it had not been treated, and was not covered, with any special non-slip surfacing material.

The plaintiff alleged that because of its steepness and because it was not surfaced with some distinctive non-slip surfacing material, and (allegedly) its lower edge was not flush with the sidewalk, the incline or so-called ramp constituted a nuisance in fact or per accidens, and that in constructing and maintaining it as it was, or in failing to alter it, the defendants were guilty of negligence that proximately caused his fall and injuries.

The steepness of the incline was the thing affecting liability that was principally dwelt on during the trial, and evidence was introduced to prove that the maximum angle of incline from horizontal that architects and construction engineers consider safe in a pedestrian's ramp is one of 16⅔ degrees. The same witness who gave this testimony testified also that a person just cannot, in any ordinary sense, walk up a ramp that is inclined at an angle of 45 degrees. There was no evidence, unless possibly a picture that appears in the record, tending to establish that the bottom edge of the incline was not flush with the sidewalk.

The plaintiff testified that the incline caused him to fall, but neither he nor any other witness undertook to say in what manner it did so. He said that nothing about the doorway was slick, and that he did not slip but stumbled. Just how the incline may have caused him to stumble was left un-

explained; no one testified that plaintiff's foot ever touched it.

Not even the plaintiff himself testified that the condition of the doorway, including the incline, was otherwise than open and obvious, or that there was anything to prevent him from seeing the incline. On the contrary, he said there was ample light by which to have seen it—he fell during daytime, about four o'clock in the afternoon—and that he could have seen it if he had looked at it:

"Q. It wasn't dark? A. Not too dark, no, sir.

"Q. Plenty light? A. Yes, sir. * * *

"Q. Do you have any trouble seeing? A. No, sir.

"Q. Do you think it's possible you could have looked down here [a designated area of a picture of the doorway] and not have seen this incline here? You don't think you could look down there and not have seen it? A. No, sir.

"Q. Could you see it? A. Yes, sir."

And another of his witnesses, Mr. Broadus, also testified that the incline was readily apparent:

"Q. In other words, it is a condition which anybody can see. I mean it is not a concealed condition or anything like that, is it? A. No, sir; you can see it if you look at it.

"Q. It is apparent on the face there what has been done, isn't it, the condition of it? A. Yes, sir." The testimony in this respect of both the plaintiff and Broadus is fully supported by the picture of the doorway that was before them when they testified and that appears in the record which is before us.

With reference to whether he did in fact see the incline, or was aware of it, before he fell, the plaintiff's testimony was perhaps somewhat conflicting. Early during cross-examination he said he did not see it until after he had fallen, but later he testified that his testimony given by deposition was correct, and in the deposition he said he was aware beforehand of the presence of the incline:

"Q. And you are claiming that this incline that you fell over the incline, is that correct? * * * What do you claim? A. I claim that when I come on in there and I see the incline, you know, in walking in there, you know, I raised my foot to go in there, you know, I raised my foot to go in there. * * *

"Q. Well, I mean—you knew the incline was there, didn't you? A. Yes.

"Q. Well, that is what I am driving at. You knew the incline was there? A. Yes, sir."

And during the trial he testified that he stumbled when he raised his foot to step up the incline, thereby indicating his awareness of the incline's presence:

"Q. Did you raise your foot up, to go in the doorway? A. Yes, sir.

"Q. You raised your foot when you started in, to step up this incline? A. Yes, sir.

"Q. But you didn't raise it far enough; is that right? A. I never remember that, how far I raised it."

The doorway and incline were in the same condition at the time of the mishap that they were in when the building was leased to defendant Cunningham on a month to month basis just a few days previously. And, so far as the record discloses, neither the owner and lessor, Seawillow Keith Estate, nor the lessee, Cunningham, had contracted or agreed to make any changes in either.

The nature of the business which defendant Cunningham operated in the building is not made entirely clear by the record, and appellant endeavors to gain advantage from the fact that Cunningham said he was operating a place of "amusement." However, the disposition that is to be made of the case renders the matter of no importance. It is sufficient that Cunningham was operating his own private business and

that the plaintiff was his business invitee, facts about which there is no dispute. The plaintiff, who was 61 years of age at the time, was entering the place of business to purchase cigarettes.

Only two points of alleged error have been brought forward. The first of these complains of the action of the trial court in sustaining the defendants' motion to strike from plaintiff's petition the allegations with reference to nuisance; and under it the argument is made not only that the petition was legally sufficient and stated a cause of action for nuisance, but that defendants' motion was too general to meet the requirements of Rule 90, Texas Rules of Civil Procedure, and amounted to no more than a general demurrer. The second point complains of the court's action in directing a verdict.

We incline to the view that defendants' motion to strike was defective in the particulars urged against it and should therefore not have been sustained; but if error was committed on this score, it was harmless because plaintiff's petition shows on its face that if plaintiff has a cause of action it is on the basis of negligence and not on the basis of a nuisance.

Before a nuisance may properly be said to exist, there must be an invasion of a public right or else of a right that arises from an interest in land. Restatement of Law of Torts, Introductory Note, Ch. 40; Prosser on Torts, p. 549, et seq.; 20 Texas Law Review, 399, 411, 412. Also, see Soap Corporation of America v. Balis, Tex.Civ. App., 223 S.W.2d 957, er. ref. n. r. e.; Burditt v. Swenson, 17 Tex. 489, 502. No right to which the plaintiff was entitled in either of these respects is claimed to have been invaded, but only a purely personal right to which he was entitled because alone of the fact that he was on the premises as an invitee. It follows, therefore, that in a legal sense and as regards the plaintiff the incline was not, in the respects relied upon, a nuisance.

We assume it to have been this concept of the law that, in Jackson v. Amador, 75 S.W. 2d 892, 893, prompted the Eastland Court of Civil Appeals to say of a splintery floor that had caused personal injury to an invitee: "This condition did not constitute a nuisance within the meaning of that term as used in those cases recognizing an exception to the general rule of the landlord's liability."

Like reasoning, with like results, was also applied by the Supreme Court of Errors of Connecticut in the case of Webel v. Yale University, 125 Conn. 515, 7 A.2d 215, 219, 123 A.L.R. 863, from which, because of its strong similarity to the case at bar, both as regards its facts and the procedural question involved, we quote the following:

"The quotation we have made from the Restatement does not purport to determine in what field of law the right of the plaintiff to recover lies, and an examination of the cases we have cited shows that in some of them the liability is treated as one in nuisance, while in others it is treated as in negligence. One who enters premises at the express or implied invitation of a tenant does not come upon them in the exercise of any public right, but is there by reason of a right extended to him by the tenant; and, if injured, the visitor to the premises cannot base his right to recover upon the existence of a public nuisance. A private nuisance exists only where one is injured in relation to a right which he enjoys by reason of his ownership of an interest in land. 'In the modern authorities it (private nuisance) includes all injuries to an owner or occupier in the enjoyment of the property of which he is in possession, without regard to the quality of the ·tenure.' Pollock, Torts, 13th Ed., p. 422; Salmond, Torts, 8th Ed., p. 235; Harper, Torts, § 179. The distinction between liability in negligence and nuisance has frequently not been clearly maintained in the cases. We have recently decided two cases where the claim might have been made that the plaintiff under this principle was not entitled to recover in nuisance because the defect complained of did not amount to a private nuisance as regards him, Stoto v. [City of] Waterbury, 119

Conn. 14, 174 A. 189; Wolfe v. Rehbein, 123 Conn. 110, 116, 193 A. 608; but in neither was this claim made. It certainly will tend to clarify in the application of legal principles if the doctrine of private nuisance is restricted to its proper field.

"The liability in this case, if one exists, belongs in the field of negligence. See 1 Tiffany, Landlord & Tenant, p. 683."

The cases of Paternostro v. Bradley, Tex.Civ.App., 262 S.W. 896; City of San Angelo v. Sitas, 143 Tex. 154, 183 S.W.2d 417, and Texas Co. v. Freer, Tex.Civ.App., 151 S.W.2d 907, cited and relied on by appellant, are not believed to establish a rule contrary to the one we have stated. If expressions to be found in the Paternostro case are at variance with our holding, they are dicta; the case appears to have been tried altogether on the basis of negligence. The Sitas case involved a violation of a city ordinance, hence the invasion of a public right. And we construe the Freer case as having been decided by the Court of Civil Appeals altogether on the basis of negligence.

 It affirmatively appearing of record that plaintiff could not plead a good cause of action on the basis of nuisance if given the opportunity to replead, the action of the trial court in sustaining defendants' motion to strike, even though improper because the motion was too general, does not require a reversal of the trial court's judgment. Kelly v. Wright, 144 Tex. 114, 188 S.W.2d 983; Killam v. Webb County, Tex. Civ.App., 270 S.W.2d 628, er. ref., n. r. e.; Presley v. City of Odessa, Tex.Civ.App., 263 S.W.2d 293. Appellant's first point is accordingly overruled.

 Appellant's second point is likewise overruled. It was not improper in the circumstances for the trial court to instruct a verdict in favor of the defendants. Beyond doubt, it is now the law of this state that no breach of duty by the owner or occupant of premises toward an invitee who has been injured on the premises because of some condition there existing is shown, and consequently no liability on the part of either results, when the condition which caused the injury, as well as such hazard as it presented, is shown to have been one that was open and obvious, or readily apparent to the invitee, and one of which the invitee either was, or reasonably should have been, aware. Robert E. McKee, General Contractor v. Patterson, Tex., 271 S.W.2d 391. The plaintiff's own testimony, with which the rest of the evidence is in accord, places the structure on which he relies for recovery, the incline or so-called pedestrian's ramp, in the category that forestalls him from recovering. If it be granted that there was a conflict in his testimony as to whether he saw and was fully aware of the incline and such hazards as it offered,—this being a question that is open to debate—, his admission that he could scarcely have helped seeing the incline, had he looked at it, cannot be ignored. Without discussing the question further, we call particular attention to the case of Marshall v. San Jacinto Building, Inc., Tex.Civ.App., 67 S.W.2d 372, error refused. The facts of that case and this are so similar that what was there said may, with equal or greater appropriateness, be said with reference to the structure and facts here involved. To the extent that one tort case may ever be said to be decisive of another, we consider the case decisive of this one.

Being of the opinion that no error is presented by the record, the judgment of the trial court is affirmed.